Carolyn **WELBORN**, Plaintiff,

v.

**REYNOLDS METALS COMPANY**, Defendant.

**No. CV 82–HM–5544–NW.**

United States District Court, N.D. Alabama, Northwestern Division.

Feb. 12, 1986.

Robert M. Shipman, Huntsville, Ala., for plaintiff.

Carolyn Welborn, pro se.

Vincent McAlister, McAlister, Ashe, Baccus & Smith, Tuscumbia, Ala., for defendant.

## MEMORANDUM OF DECISION

HALTOM, District Judge.

The above entitled Title VII (42 U.S.C. § 2000e et seq.) civil action charging sex discrimination against defendant Reynolds Metals Company ("Reynolds Metals") for its failure to employ plaintiff Carolyn Welborn at the Reynolds Metals Alabama Reclamation Plant in Colbert County, Alabama following plaintiff's March 1982 application for employment came on to be heard for final bench hearing at the Federal Courthouse in Florence, Alabama on November 27, 1984. At the close of all of the evidence in the case the Court orally announced of record in open court that final judgment would be rendered in favor of defendant Reynolds Metals because of the obvious failure of plaintiff to establish a prima facie case of sex discrimination, noting that the statistical evidence presented by plaintiff was also wholly insufficient to establish her individual claim. Moreover, announced the Court, a judgment for defendant Reynolds Metals was due to be entered even if the evidence could be construed to establish a prima facie case of sex discrimination for the reason that the defendant had articulated a legitimate, nondiscriminatory reason for not hiring plaintiff at its Reclamation Plant and plaintiff thereafter failed to prove by a preponderance of the evidence that the legitimate reason offered by defendant was not its true reason but was a pretext for discrimination.

The Court here notes that the Court did not at the conclusion of the bench hearing state its findings of fact and conclusions of law orally of record nor has the Court to this date filed herein its findings of fact and conclusions of law in written form, nor has a final judgment been entered in this action in favor of defendant Reynolds Metals Company other than the Court's oral announcement hereinabove described. However, the Court now takes this submitted case off the back burner (where it has long rested for no good reason), finds the facts herein specially and states separately its conclusions of law thereon in conformity with Rule 52, Fed.R.Civ.P.

## FINDINGS OF FACT

1. Plaintiff Carolyn Welborn is a white female citizen of the United States residing

in the City of Florence, Alabama. She was employed by defendant Reynolds Metals as a production employee at its REDUCTION PLANT in Colbert County, Alabama, from June 19, 1978 until July 13, 1980 when she was laid off by reason of a substantial reduction in force (RIF) when the entire South Plant was closed down due to curtailment of potline production. This RIF involved approximately 242 production workers, about 214 male and 28 female employees. During this period of her employment at the Reduction Plant plaintiff was trained in the pot room on various jobs, worked as a tapping helper in the pot room for about twenty months and also worked as a skimmer stacker in the cast house. Admittedly, her work record was good. Plaintiff was a member of the Aluminum Workers Union (Local 200) at the Reduction Plant. This labor union had entered into a collective bargaining agreement with Reynolds Metals on behalf of all Reduction Plant production employees. Pursuant to such collective bargaining agreement plaintiff in laid-off status drew Supplemental Unemployment Benefits from Reynolds Metals Reclamation Plant in average gross amount of $313.88 per week (including state unemployment compensation) the entire part of 1980 and part of 1981 (for 52 weeks) and had certain contractual recall rights to her job at the Reduction Plant.

2. At all times herein pertinent Reynolds Metals Company owned and operated six (6) separate, district and independent operating plants in Colbert County, Alabama: (1) Reynolds Metals Company Alloys Sheet and Plate Plant (Reynolds Alloys) whose production employees were represented by the Aluminum Workers Union; (2) Reynolds Metals Company Wire Rod and Bar Plant whose production employees were also represented by the Aluminum Workers Union; (3) Reynolds Metals Company Reduction Plant whose production employees were also represented by the Aluminum Workers Union; (4)

Reynolds Metals Company Reduction Research Facility; (5) Reynolds Metals Company Alabama Reclamation Plant (Reclamation Plant) whose production employees were represented by the Operating Engineers Union; and (6) Reynolds Metals Company Sheffield Can Plant, Mill Products Division, whose employees, other than management, were represented by Carpenters Local Union Local 109. Each described plant operated independently of the other and had separate employment policies and practices, including separate collective bargaining agreements which mandated separate seniority application and recall rights for covered union member employees.

3. Plaintiff Carolyn Welborn makes no complaint in this litigation regarding Reynolds Metals' failure to rehire her at its Reduction Plant.

4. In March 1981 plaintiff made application for employment at Reynolds Metals Alabama Reclamation Plant. She applied for any type of work there available but was not hired. No complaint of any kind was filed in 1981 by plaintiff with EEOC following her unsuccessful March 1981 application.[1]

5. In March 1982 plaintiff made second application for employment at the Reynolds Metals Reclamation Plant. Other male and female former employees of the Reduction Plant who were also in layoff status from the Reduction Plant made application for employment at the same plant at the same time. Plaintiff was not hired. In April 1982 plaintiff spoke with Martin Hardy (Personnel Manager at the Reclamation Plant) questioning him why none of the female applicants in layoff status at the Reduction Plant were employed by the Reclamation Plant. Plaintiff testified that Mr. Hardy told her that he could not hire her at the Reclamation Plant because of an agreement with EEOC. No evidence refutes this testimony and the Court accepts such testi-

---

**1.** Any claim of discrimination by plaintiff against defendant arising out of her March 1981 application for employment is barred because of plaintiff's failure to file a charge with EEOC within 180 days of the alleged discriminatory act. 42 U.S.C. § 2000e–5(e). The Court does not understand plaintiff's counsel to contend otherwise.

mony as being true and correct.[2] Mr. Hardy's March 1982 statement to the press which appeared in the March 27, 1982 issue of the Florence Times Tri-Cities Daily fairly and accurately depicts Reynolds Metals quandary respecting the large number of applications for employment for the very few jobs available at its Reclamation Plant in March 1982 and in the months thereafter. It is undisputed that 16 males and 8 females ("off the street" female applicants, according to plaintiff) were eventually hired by the Reclamation Plant during the 1982 period in question. Some RIF male applicants whose work experience was compatible with the work required to be performed at the Reclamation Plant, considering their tenure, work record, attendance and impression made in interviews, were rehired in this described March 1982 "skinny" hiring episode.

6. On May 27, 1982 plaintiff Carolyn Welborn filed her charge with EEOC against Reynolds Metals Company—Alabama Reclamation Plant asserting that on March 26, 1982 and continuing Reynolds Metals Company at its Reclamation Plant had discriminated and was discriminating against her in the following particular respects:

I. On March 26, 1982, and continuing, the above employer has refused to rehire me as a laborer—I am presently laid off from the Reduction Plant in Listerhill, Alabama where I had been employed for about two years. The employer has more than 15 employees.

II. Martin Hardy, personnel manager, told me he could not rehire me because of an agreement with the Equal Employment Opportunity Commission.

III. I believe I am being discriminated against because of my sex, female, inasmuch as:

1. About March 29, 1982, an article appeared in a local newspaper stating that applicants in layoff status from other Reynolds plants would be given first consideration for jobs at the Reclamation Plant.

2. About 18 females are in layoff status from the Reduction Plant. Men in layoff status from the Reduction Plant have been rehired at the Reclamation Plant. They are: Jimmy Campbell, Morris Wallace, George Horton, Steve Slappey and Steve James.

7. Under date of August 6, 1982 EEOC issued RIGHT TO SUE letter to plaintiff signed by the District Director on behalf of the Commission (with information copy to Reynolds Metals Company, Alabama Reclamation Plant) with the following described box checked:

☒ Less than 180 days have expired since the filing of this charge but I have determined that the Commission will be unable to complete its administrative process within 180 days from the filing of the charge.

No determination was made by EEOC with respect to the validity of plaintiff's charge.

8. On September 14, 1982 plaintiff Carolyn Welborn filed her pro se *Application under Section 706(f) of Civil Rights Act of 1964* in the Office of the Clerk of the United States District Court for the Northern District of Alabama applying for authority to commence an action (in forma pauperis) without prepayment of fees, costs, or security and for appointment of attorney. The following day, September 15, 1982 Order of the Court (Propst, J.) was rendered (entry date, September 16, 1982) herein granting plaintiff's application in all respects (subject to Magistrate appointing attorney) and providing that *"[t]he application shall be treated as a complaint under Title VII, Civil Rights Act of 1964, and deemed filed this date, but an amended complaint, complying with the Federal Rules of Civil Procedure and suitable for service on the defendants named therein, shall be filed with the court within 30 days from the date hereof*

---

**2.** The Reclamation Plant was obligated under its Settlement Agreement with EEOC to hire *only* designated blacks and females who had unsuccessfully applied for employment with the Reclamation Plant and who had been adversely impacted by the Reclamation Plant's alleged discriminatory hiring practices before January 1, 1982.

*(unless extended by order of the court), failing which this cause shall be dismissed for want of prosecution."* In her above described application (Section II. Nature of Alleged Discrimination, ¶ A) plaintiff described in her own words the employment practices about which she was complaining:

Because of an agreement between Reynolds and the EEOC, which is a highly secret and confidential matter, I was denied my right to work at the Reclamation Plant. I had a personal talk with the plants personnel manager, Martin Hardy, and he expressed regrets because I am qualified and come recommended highly from Reynolds Reduction Plant which is where I am laid off. He hired 16 men from the Reduction Plant but told me that he could not consider me because I am female and that he had to comply with secret agreement.

9. In plaintiff's application described in Finding of Fact 8 above and in Section II—Nature of Alleged Discrimination, ¶ E, plaintiff disclosed the following information as being supportive of her claim of discriminatory employment practices:

At the conference in Birmingham on July 22, I was asked to leave the room so that the Reynolds lawyer and Mr. Hardy could discuss this secret agreement. It is un-American and unfair to hire women off the street instead of hiring laid off females from Reynolds. I worked side by side with the males who were hired from the Reduction Plant yet could not be considered at the Reclamation Plant because I was indeed female *and* had worked for Reynolds.

Shortly following Judge Propst's September 15, 1982 Order referred to above the Court appointed Robert M. Shipman of the Huntsville, Alabama Bar and a member of the Bar of this Court to serve and act as counsel for plaintiff in this action. On November 8, 1982 Mr. Shipman filed amended complaint for and on behalf of plaintiff. This amended complaint is rested solely on one individual claim of disparate treatment.[3]

10. Defendant Reynolds Metals for its Alabama Reclamation Plant entered into a Settlement Agreement with EEOC, unrelated to any claim of plaintiff, which became effective on January 1, 1982. This agreement resolved all Title VII matters occurring or allegedly occurring prior thereto at such Reclamation Plant. Under the terms of such agreement certain impacted or allegedly impacted individuals (blacks and females) were designated by

---

**3.** Under date of March 3, 1983 plaintiff Welborn moved this Court to allow an amendment of her complaint to *"bring this cause of action under class action treatment."* On June 1, 1983 plaintiff filed herein motion *for further relief regarding finances,* including but not limited to waiver of marshal's fees for service of process, witness fees and mileage fees for the taking of depositions and testimony at trial and presumably court reporter fees for depositions. United States District Judge William M. Acker of this Court took over this case temporarily when the undersigned judge had a severe heart attack on December 31, 1983 which resulted in by-pass surgery and convalescence until April 1, 1984. Judge Acker denied plaintiff's motion for further relief regarding finances on January 27, 1984. On February 6, 1984 Judge Acker entered Order herein granting plaintiff's motion for leave to amend her complaint and providing June 1, 1984 cutoff date for class action issue discovery. On June 18, 1984 plaintiff filed her amended complaint seeking to convert her individual claim into class action status, attaching thereto eight (8) identical affidavits (except for name in prepared blank space) from other females who allegedly worked for the Reynolds Metals Reduction Plant, were laid off in the 1980 RIF, subsequently made application for employment *"at another Reynolds plant in the same area"* in March 1981 and March 1982 but were not hired. At some time subsequent to June 18, 1984 and prior to or on September 7, 1984 (date of pre-trial conference herein) the Court entered separate order in this case denying class certification (¶ 4, Pre-Trial Order). Such denial was rested on lack of requisite numerosity and inability of plaintiff and her counsel of record to fairly and adequately protect the interest of the class. Plaintiff Carolyn Welborn informed the Court of her impoverished status at the outset of this litigation. On June 1, 1983 she reported to the Court that her financial condition had worsened. Mr. Shipman is a fine man but he is ill-equipped in more ways than one as an attorney to serve and act as counsel for a class comprised of laid off employees of Reynolds Metals Company claiming sex discrimination on the part of their former employer in failing to rehire them.

EEOC as persons affected adversely by the hiring practices of Reynolds Metals at its Alabama Reclamation Plant. Reynolds Metals agreed to attempt to place a certain number of these individuals so designated in hourly jobs at such plant. Plaintiff Carolyn Welborn was not a designated applicant inasmuch as she was not in the impacted group and had already been employed by Reynolds Metals at its Reduction Plant. *The designated category of impacted applicants were minorities and females who had applied at the Reclamation Plant but had not been so employed* (emphasis supplied). As hiring occurred at defendant's Alabama Reclamation Plant after January 1, 1982 defendant employed females and minorities who were in the category designated by the EEOC agreement. Since the January 1, 1982 effective date of its Settlement Agreement with EEOC Reynolds Metals Alabama Reclamation Plant has fulfilled the terms and conditions of such agreement. During 1982 defendant hired 16 males and 8 females at its Reclamation Plant, all in compliance with such EEOC settlement agreement.

11. Defendant's Exhibit # 1, being letter dated May 26, 1982 from EEOC, Washington, D.C. (Noel A. Togmazzini, Supervisor, Investigations Division, Office of Systemic Programs) to J. Vernon Glenn, Assistant Director, Equal Opportunity Affairs, Reynolds Metals Company, Richmond, Virginia, constitutes an implementation of the Settlement Agreement referred to in Finding of Fact # 10, ante, and contains a list of the 135 female individuals eligible for a monetary award under the terms of the agreement between Reynolds and EEOC dated January 1, 1982 respecting Reynolds Metals Alabama Reclamation Plant. Such female individuals therein listed constitute female applicants adversely impacted or allegedly adversely impacted by the hiring practices of the Alabama Reclamation Plant of Reynolds Metals prior to January 1, 1982. Plaintiff's name is not listed thereon.

12. In July 1983 plaintiff Carolyn Welborn made application for employment with Reynolds Metals Company at its Alloys Plant in Colbert County, Alabama along with other applicants, was hired, worked in the cast house of such plant from July 13, 1983 to November 13, 1983, at which time she was laid off along with a 100 or so other production employees due to a reduction in force caused by adverse conditions in the aluminum metal market. Under Reynolds Metals applicable collective bargaining agreement with plaintiff's Union (Aluminum Workers) plaintiff has recall rights to reemployment at the Alloys Plant and enjoyed other layoff status benefits thereunder.

13. Two or three months prior to the November 27, 1984 bench hearing plaintiff applied for the position of oiler at Reynolds Metals Reduction Plant in Colbert County, Alabama (where she was originally employed) but was not hired. Her application was submitted on the basis of a rumor she heard that the Reduction Plant needed oilers.

14. At the time of the November 27, 1984 bench hearing plaintiff Carolyn Welborn held contractual recall rights from the Alabama Reclamation Plant and from the Alloys Plant of Reynolds Metals Company in Colbert County, Alabama under the respective collective bargaining agreements in force and effect between such plant and plaintiff's Union (Aluminum Workers) but had not been recalled. Neither had she been hired by any other plants operated by Reynolds Metals Company.

15. The recall rights of plaintiff to be reemployed by recall at Reynolds Metals Reduction Plant gave plaintiff no contractual rights under the collective bargaining agreement to be employed at Reynolds Metals Reclamation Plant when she made her 1981 and 1982 applications for employment by the Reclamation Plant.

16. The meager statistical evidence introduced by plaintiff as the bench hearing seeking to prove that Reynolds Metals' employment practices at its Alabama Reclamation Plant (and perhaps at other Colbert County, Alabama plants operated by defendant Reynolds Metals Company) had a

disparate impact on female applicants is wholly insufficient to establish plaintiff's individual claim of sex discrimination against the Reynolds Metals Reclamation Plant. Moreover, such issue is not raised in plaintiff's charge filed with EEOC nor did plaintiff's counsel seek to include such issue in the pretrial order.

17. Reynolds Metals Company has closed its eight pot lines in its Colbert County, Alabama plant complex where primary aluminum was made; its wire, rod and bar operations have been eliminated; and employment at the Colbert County Reynolds plant complex, once 5,500, has shrunk to 3,018. This vastly reduced operation has been caused by adverse domestic and foreign economic factors. Plaintiff's loss of her job at Reynolds Metals is indeed regrettable but her failure to regain employment there is but a similar plight shared by thousands of others in the Muscle Shoals area which has the highest percentage of unemployment of any area in the State of Alabama. It is clear and certain that plaintiff's failure to obtain employment at Reynolds Metals Reclamation Plant which is the subject of this lawsuit was not caused by sex discrimination on the part of defendant Reynolds Metals Company and the Court so finds and holds as a fact from the evidentiary record in this case.

## CONCLUSIONS OF LAW

1. The Court has subject matter jurisdiction of the above entitled civil action pursuant to 42 U.S.C. § 2000e–5(f)(3) and 28 U.S.C. § 1331.

2. 42 U.S.C. § 2000e–2(a) provides that it shall be an unlawful employment practice for an employer to fail or refuse to hire ... any individual ... because of such individual's ... sex. If the defendant Reynolds Metals discriminated against plaintiff Carolyn Welborn because of her sex with respect to its failure to hire her following her March 1982 application for employment at the Reynolds Metals Reclamation Plant, plaintiff is entitled to judgment in her fa-

vor in this action, together with remedial relief.

3. In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the United States Supreme Court set forth the basic allocations of burdens and order of presentation of proof in a Title VII case alleging discriminatory treatment. Because some lower courts thereafter misconstrued *McDonnell Douglas* by placing upon defendant employers a heavier burden of proof than is required by law to prove the existence of nondiscriminatory reasons for its complained of employment practices after plaintiff had proved a prima facie case of discriminatory treatment, the United States Supreme Court in *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), refined its *McDonnell Douglas* holding. In *Burdine* the respondent filed suit in the federal district court, alleging, *inter alia*, that her termination of employment with petitioner was predicated on gender discrimination in violation of Title VII of the Civil Rights Act of 1964. The District Court found that the testimony for petitioner sufficiently had rebutted respondent's allegation of gender discrimination in the decision to terminate her employment. The Court of Appeals reversed this finding, holding that the defendant in a Title VII case bears the burden of proving by a preponderance of the evidence the existence of legitimate, nondiscriminatory reasons for the employment action and also must prove by objective evidence that those hired were better qualified than the plaintiff, and that the testimony for petitioner did not carry either of these burdens. The United States Supreme Court vacated the judgment of the former Fifth Circuit Court of Appeals and remanded the case for further proceedings, holding that the Court of Appeals erred by requiring the defendant to prove by a preponderance of the evidence the existence of nondiscriminatory reasons for terminating the respondent and that the person retained in her stead had superior qualifications for the position. When the plaintiff has proved a prima facie case of discrimina-

tion, ruled the Court in a one-sentence punch line, *the defendant bears only the burden of explaining clearly the nondiscriminatory reasons for its actions* (emphasis supplied). The following Part II language of the *Burdine* court (at pp. 252–256, incl., 101 S.Ct. at pp. 1093–1095, incl.) is helpful to an understanding of its bottom-line ruling:

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 [93 S.Ct. 1817, 36 L.Ed.2d 668] (1973), we set for the basic allocation of burdens and order of presentation of proof in a Title VII case alleging discriminatory treatment. First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.*, at 802 [93 S.Ct. at 1824]. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Id.*, at 804 [93 S.Ct. at 1825].

The nature of the burden that shifts to the defendant should be understood in light of the plaintiff's ultimate and intermediate burdens. The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. See *Board of Trustees of Keene State College v. Sweeney*, 439 U.S. 24, 25, n. 2 [99 S.Ct. 295, 296, n. 2, 58 L.Ed.2d 216] (1978); *id.*, at 29 [99 S.Ct. at 297] (Stevens, J.,'dissenting). See generally 9 J. Wigmore, Evidence § 2489 (3d ed. 1940) (the burden of persuasion "never shifts"). The *McDonnell Douglas* division of intermediate evidentiary burdens serves to bring the litigants and the court expeditiously and fairly to this ultimate question.

The burden of establishing a prima facie case of disparate treatment is not onerous. The plaintiff must prove by a preponderance of the evidence that she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination. The prima facie case serves an important function in the litigation: it eliminates the most common nondiscriminatory reasons for the plaintiff's rejection. See *Teamsters v. United States*, 431 U.S. 324, 358, and n. 44 [97 S.Ct. 1843, 1866, and n. 44, 52 L.Ed.2d 396] (1977). As the Court explained in *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577 [98 S.Ct. 2943, 2949, 57 L.Ed.2d 957] (1978), the prima facie case "raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee. If the trier of fact believes the plaintiff's evidence, and if the employer is silent in the face of the presumption, the court must enter judgment for the plaintiff because no issue of fact remains in the case.

The burden that shifts to the defendant, therefore, is to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. The defendant need not persuade the court that it was actually motivated by the proffered reasons. See *Sweeney, supra* [439 U.S.] at 25 [99 S.Ct. at 296]. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant. If the defendant carries this burden of production, the presumption

raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. Placing this burden of production on the defendant thus serves simultaneously to meet the plaintiff's prima facie case by presenting a legitimate reason for the action and to frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext. The sufficiency of the defendant's evidence should be evaluated by the extent to which it fulfills these functions.

The plaintiff retains the burden of persuasion. She now must have the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision. This burden now merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination. She may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence. See *McDonnell Douglas*, 411 U.S., at 804–805 [93 S.Ct., at 1825–1826].

450 U.S., at 252–256, 101 S.Ct., at 1093–1095, fn omitted.

Because counsel for plaintiffs in employment discrimination cases so frequently argue mistakenly that the defendant under *McDonnell Douglas* is required to prove by objective evidence that the person hired or promoted was more qualified than their plaintiff client, the Court directs the attention of counsel of record for plaintiff to the language found in Part III(B) of the *Burdine* opinion at 258–259, 101 S.Ct. at 1096–1097, incl.:

The Court of Appeals also erred in requiring the defendant to prove by objective evidence that the person hired or promoted was more qualified than the plaintiff. *McDonnell Douglas* teaches that it is the plaintiff's task to demonstrate that similarly situated employees were not treated equally. 411 U.S., at 804 [93 S.Ct., at 1825]. The Court of Appeals' rule would require the employer to show that the plaintiff's objective qualifications were inferior to those of the person selected. If it cannot, a court would, in effect, conclude that it has discriminated.

The court's procedural rule harbors a substantive error. Title VII prohibits all discrimination in employment based upon race, sex, and national origin. "The broad, overriding interest, shared by employer, employee, and consumer, is efficient and trustworthy workmanship assured through fair and ... neutral employment and personnel decisions." *McDonnell Douglas, supra,* at 801 [93 S.Ct. at 1823]. Title VII, however, does not demand that an employer give preferential treatment to minorities or women. 42 U.S.C. § 2000e–2(j). See *Steelworkers v. Weber,* 443 U.S. 193, 205–206 [99 S.Ct. 2721, 2728–2729, 61 L.Ed.2d 480] (1979). The statute was not intended to "diminish traditional management prerogatives." *Id.,* at 207 [99 S.Ct. at 2729]. It does not require the employer to restructure his employment practices to maximize the number of minorities and women hired. *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577–578 [98 S.Ct. 2943, 2949–2950, 57 L.Ed.2d 957] (1978).

The views of the Court of Appeals can be read, we think, as requiring the employer to hire the minority or female applicant whenever that person's objective qualifications were equal to those of a white male applicant. But Title VII does not obligate an employer to accord this preference. Rather, the employer has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria. The fact that a court may think that the employer misjudged the qualifications of the applicants does not in itself expose him to Title VII liability, although this may be probative of whether the employer's reasons are pretexts for discrimination. *Loeb v. Textron, Inc., supra* [600 F.2d 1003] at 1012, n. 6 [CA1 1979]; see *Lieberman v. Gant,* 630 F.2d 60, 65 (CA2 1980).

■ 4. In this case plaintiff Carolyn Welborn has failed to establish by a preponderance of the evidence a prima facie case of sex discrimination against defendant Reynolds Metals with respect to her claim of discrimination arising from the failure of the Reynolds Metals Reclamation Plant to hire her following her March 1982 application for employment.[4] An analysis of the appropriate *McDonnell Douglas* model for a prima facie case of sex discrimination reveals that plaintiff was not a *qualified woman* for the position sought by her at the Reclamation Plant in that she was not a member of the class of females who had been adversely impacted by Reynolds Metals Company's hiring practices at its Reclamation Plant prior to January 1, 1982. While the evidence clearly shows that she was qualified for the job sought in one sense of the word (that is qualified to do the actual work) the evidence also shows without dispute that in another sense of the word she was not qualified because these job positions at Reynolds Metals Reclamation Plant in March and April 1982 and in subsequent 1982 months were only available to designated and identified females who had previously applied for work there and had been rejected. Thus, plaintiff was not qualified in that she was neither designated nor identified as an eligible female in the Reynolds-EEOC negotiations and Settlement Agreement. Further, the evidence here shows without contradiction that the Reynolds Metals Reclamation Plant was not seeking just female applicants in March and April 1982 and in the 1982 months subsequent thereto—it was seeking only female applicants who had previously been designated and identified by EEOC as being adversely impacted by Reynolds Metals Reclamation Plant's hiring practices.

Moreover, the scanty statistical evidence presented by plaintiff at the final bench hearing was also wholly insufficient to establish a prima facie case with respect to her individual claim of sex discrimination. Actually, such evidence was outside the purview and parameter of the pretrial order entered in this case.

■ 5. A judgment for defendant Reynolds Metals is due to be entered in the above entitled civil action even if the evidence can be construed to establish a prima facie case of sex discrimination for the reason that with respect to all actions of Reynolds Metals Reclamation Plant alleged by plaintiff to constitute sex discrimination against her Reynolds Metals has articulated a legitimate nondiscriminatory reason for its failure to hire plaintiff at its Reclamation Plant, namely that it was acting pursuant to and in compliance with a valid affirmative action Settlement Agreement with EEOC, unrelated to any claim of plaintiff, which became effective January 1, 1982, and that its action was remedial and reasonable (see footnote 2, Finding of Fact # 5, ante; Findings of Fact # 6, # 8 and # 10, ante). The affirmative action plan of Reynolds Metals Company required to be implemented by the Settlement Agreement was "substantially related to the object of remedying prior discrimination." *Fullilove v. Klutznick,* 448 U.S. 448, 100 S.Ct. 2758, 65 L.Ed.2d 902 (1980). The United States Court of Appeals for the Eleventh Circuit in *Palmer v. Dist. Bd. of Trustees of St. Petersburg Junior College,* 748 F.2d 595 (11th Cir.1984), has held that in an action against a former employer charging Title VII discrimination the actions of the employer complained about do not constitute illegal discrimination under Title VII when such actions were reasonable means of seeking to remedy past discrimination pursuant to a valid affirmative action order to which it was subject.[5] That is the case

---

**4.** See footnote 1, ante.

**5.** When [Clarence Edward Palmer] was not appointed to [a] permanent position as vocal music teacher at [St. Petersburg Junior College] after his initial nine-month appointment, [the] disappointed applicant brought action against [the] junior college board under Title VII, Age Discrimination in Employment Act, other civil

rights statutes, and state law. The United States District Court for the Middle District of Florida, ... entered summary judgment in favor of [the] board, and applicant appealed. The [Eleventh Circuit] Court of Appeals held that: (1) applicant failed to state claim under Age Discrimination in Employment Act, and (2) neither applicant's initial temporary appointment nor his failure to be selected for permanent appoint-

here in a nutshell. Without question the hiring of the 8 females at the Reclamation Plant following plaintiff's March 1982 application for employment was a direct consequence of Reynolds Metals implementation on behalf of its Reclamation Plant of a bona fide affirmative action plan, was remedial and did not exceed its remedial purpose. *Id.*, at 21. And plaintiff has presented no evidence in this case showing or tending to show that the legitimate reasons offered by defendant Reynolds Metals were not its true reasons, but were a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825; *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093.

For the reasons hereinabove stated, judgment in favor of defendant Reynolds Metals Company is due to be entered. An appropriate order will be issued.

ment constituted illegal "reverse discrimination," inasmuch as both actions were under-

taken by college pursuant to [a] valid affirmative action order to which it was subject.