Carolyn WELBORN, Plaintiff-Appellant,

v.

REYNOLDS METALS COMPANY,
Defendant-Appellee.

No. 86–7116.

United States Court of Appeals,
Eleventh Circuit.

Feb. 19, 1987.
Rehearing and Rehearing En Banc
Denied March 30, 1987.

Robert M. Shipman, Huntsville, Ala., for plaintiff-appellant.

Vincent McAlister, Almon, McAlister, Ashe, Baccus & Smith, Tuscumbia, Ala., for defendant-appellee.

Before KRAVITCH and CLARK, Circuit Judges, and HENDERSON, Senior Circuit Judge.

PER CURIAM:

This is an appeal from a final judgment in favor of the appellee, Reynolds Metal Company ("Reynolds"), entered by the United States District Court for the Northern District of Alabama on the appellant's complaint alleging sex discrimination in employment.

Carolyn Welborn, a white female, was employed by Reynolds as a production employee at its Reduction Plant in Colbert County, Alabama, from June 19, 1978, to July 13, 1980, when she was laid off due to a general reduction in force. At all times herein pertinent Reynolds owned and operated six separate plants in Colbert County. In March 1981 Welborn applied for employment at one of Reynolds' five other plants, specifically the Reclamation Plant. She was not hired on this occasion and filed no complaint following the rejection of her application.

In March 1982 Welborn again sought employment at the Reclamation Plant. Other male and female former employees of the Reduction Plant who were in layoff status also applied at the same time. Although Welborn was not offered employment at this time, twenty-four individuals, sixteen males and eight females, were hired. In April 1982, following the failure of her latest effort, Welborn spoke to the personnel manager at the Reclamation Plant, inquiring as to why no female applicants in layoff status at the Reduction Plant had been among those twenty-four individuals hired at the Reclamation Plant, although similarly situated males had been hired. She testified that the personnel manager informed her that he could not employ her at the Reclamation Plant because of an agreement with the Equal Employment Opportunity Commission ("EEOC"). In this respect, the district court found that Reynolds' Reclamation Plant entered into a settlement agreement with the EEOC on January 1, 1982. This agreement was unrelated to any claim of the appellant, and resolved all Title VII disputes arising or allegedly arising prior to January 1, 1982, at that facility. Under the terms of the agreement certain specifically identified blacks and females were designated by the EEOC as persons who had been adversely affected by Reynolds' hiring practices at the Reclamation Plant. Reynolds agreed to attempt to place nineteen of these individuals in subsequent vacancies (EEOC Settlement Agreement, Defendant's Exhibit 2, p. 18, ¶ E) [1] and to give qualified black/female applicants preferential consideration for hiring in an attempt to meet certain numerical affirmative action goals. (*Id.* at pp. 8–10.)

On May 27, 1982, Welborn filed a charge of sex discrimination with the EEOC against the Reclamation Plant. The EEOC issued a right-to-sue letter to her on August 6, 1982, after which she filed a pro se "Application under Section 706(f) of Civil Rights Act of 1964." In this "application" Welborn described in her own words the employment practices about which she was complaining:

Because of an agreement between Reynolds and the EEOC, which is a highly secret and confidential matter, I was denied my right to work at the Reclamation Plant. I had a personal talk with the plant's personnel manager, Martin Hardy, and he expressed regrets because I am qualified and came recommended highly from Reynolds Reduction Plant which is where I am laid off. He hired 16 men from the Reduction Plant but told me that he could not consider me

---

1. The settlement agreement was introduced by the defendant into evidence during the trial in the district court (Transcript, p. 57), but was not made a part of the Record on Appeal. Because its contents are crucial to a determination of this case, we ordered that the agreement be made a part of the Record in this court.

because I am female and that he had to comply with secret agreement.

The district court treated this application as a timely complaint under Title VII, but required the appellant to file an amended complaint complying with the Federal Rules of Civil Procedure. Counsel was appointed and an amended complaint was filed as ordered by the court. On November 27, 1984, the district court held a final bench trial and at the conclusion of the case orally announced that final judgment would be rendered in favor of Reynolds. On February 11, 1986, the district court filed its findings of fact and conclusions of law and judgment was entered for Reynolds on February 12, 1986.

The sole issue on appeal is whether the district court was correct in concluding that 1) Welborn failed to present a prima facie case of sex discrimination and 2) even if she had made out a prima facie case, Reynolds articulated a legitimate nondiscriminatory reason for its failure to hire her.

■ The law establishing the various burdens of proof borne by the parties to a so-called "disparate treatment" action such as the present one was set forth by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[2] The complainant must first establish a prima facie case of discrimination. As used in the Title VII context, the phrase "prima facie case" refers to the "establishment of a legally mandatory, rebuttable presumption" of discrimination. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254 n. 7, 101 S.Ct. 1089, 1094, n. 7, 67 L.Ed.2d 207, 216, n. 7 (1981). In a case alleging a failure to hire, such as is alleged here, the charging party may establish a prima facie case by showing 1) that she or

he is a member of a protected class; 2) that she or he applied and was qualified for a job for which the employer was seeking applicants; 3) that despite her or his qualifications, she or he was rejected; and 4) that after this rejection the position remained open or was filled by a person not within the protected class. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824, 36 L.Ed.2d at 677.

■ In the present case we conclude that the appellant did prove a prima facie case of sex discrimination. As a female she is certainly within a protected class as defined by Title VII, she did seek a position for which Reynolds was offering employment, she was rejected, and Reynolds did continue hiring for this position and, in fact, filled the position. Moreover, it is clear that Welborn was qualified for the job for which she applied. The district court explicitly found that she was qualified to do the work required for the position, *Welborn v. Reynolds Metals Co.*, 629 F.Supp. 1433, 1442 (N.D.Ala.1986). Despite this fact the district court held that she was not a "qualified woman" for the position sought because "she was not a member of the class of females who had been adversely impacted by Reynolds Metals Company's hiring practices at its Reclamation Plant prior to January 1, 1982." *Id.* We disagree with this reasoning. The focus at the prima facie phase of a case is whether an applicant is qualified to do the job for which she or he applies, *McDonnell Douglas*. As noted above, the district court explicitly found that Welborn was qualified for those duties. Whether she was included within the EEOC agreement as an individual previously adversely impacted is an inquiry more germane to the issue of whether Reynolds produced a le-

---

**2.** Although counsel for Welborn characterized this action as one alleging disparate impact (see Transcript, p. 75) we disagree. A disparate impact case is one in which the plaintiff alleges that a facially neutral test or employment criterion which disproportionately disqualifies a protected class from employment, promotion, or the like is not job related. *See e.g., Dothard v. Rawlinson*, 433 U.S. 321, 97 S.Ct. 2720, 53

L.Ed.2d 786 (1977); *Griggs v. Duke Power*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). This is simply not the allegation in this action. Welborn has not attacked any test or employment criterion; instead she has alleged that she was treated less favorably than her peers because of her sex. This action therefore alleges disparate treatment.

gitimate, nondiscriminatory reason for its refusal to hire the appellant.

In addition to determining that Welborn had not presented a prima facie case of sex discrimination, the district court also held that Reynolds had "articulated a legitimate nondiscriminatory reason for its failure to hire plaintiff at its Reclamation Plant, namely that it was acting pursuant to and in compliance with a valid affirmative action Settlement Agreement with EEOC." *Welborn*, 629 F.Supp. at 1442. We conclude that the district court also erred on this point.

■ Once an individual has presented a prima facie case of discrimination the burden shifts to the employer to rebut the presumption of discrimination by producing evidence that the complainant was rejected, or someone else was preferred, for a legitimate nondiscriminatory reason. *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094, 67 L.Ed.2d at 216. Here, Reynolds relied totally upon its agreement with the EEOC. We need not decide whether a settlement agreement with the EEOC can constitute a proper basis for a refusal to hire, because in this case the specifics of the settlement agreement in evidence, Defendant's Exhibit 2, do not provide a legitimate justification for Reynolds' failure to hire Welborn.

■ The district court's determination that Reynolds had articulated a legitimate nondiscriminatory reason for its actions is premised on an erroneous finding of fact.[3] According to the district court,

> [t]he Reclamation Plant was obligated under its Settlement Agreement with EEOC to hire *only* designated blacks and females who had unsuccessfully applied for employment with the Reclamation Plant and who had been adversely impacted by the Reclamation Plant's alleged discriminatory hiring practices before January 1, 1982.

*Welborn*, 629 F.Supp. at 1436, n. 2 (emphasis in original). In fact, the settlement agreement does not preclude Reynolds from hiring blacks or females other than those on the list of individuals adversely impacted. What the agreement does require is that Reynolds "attempt to place nineteen of the individuals so designated [as previously adversely affected] in hourly jobs at one or more of [its] plants, making up to forty offers of employment in order to meet the objective of employing nineteen individual." (EEOC Agreement, Defendant's Exhibit 2, p. 18, ¶ E). Nothing in the agreement prohibits Reynolds from hiring blacks or females not on the list of designated individuals. In fact, the agreement contemplates applications by other blacks and females (*id.* at p. 8, ¶¶ A–C) and requires that the applications of those new blacks and females be placed in an Affirmative Action file, which file will be consulted upon the occurrence of vacancies. (*Id.* at p. 9, ¶¶ E–F). Therefore, assuming arguendo that the eight females hired by the Reclamation Plant in 1982, from the list of designated individuals, were hired in order to comply with Reynolds' obligation under the agreement to hire nineteen such individuals, there is nothing in the record to indicate why the appellant was not considered for one of the remaining sixteen positions, which were all filled by males. Although the appellee argued, and the district court found, that Reynolds could not hire the appellant because she was not one of the individuals found to have been previously adversely affected, we hold that such argument/finding misinterprets the EEOC agreement and therefore cannot supply a legitimate, nondiscriminatory reason for Reynolds' failure to consider Welborn for one of the remaining sixteen positions. Because the appellee failed to introduce any other evidence which could provide a legitimate, nondiscriminatory reason for its failure to hire Welborn, the judgment of the district court is

REVERSED.

---

**3.** In reviewing findings of fact by a district court we utilize the clearly erroneous standard, *United States v. United States Gypsum Co.*, 333 U.S. 364, 394–95, 68 S.Ct. 525, 541–42, 92 L.Ed. 746, 765–66 (1948); *Hardin v. Stynchcomb*, 691 F.2d 1364, 1372 (11th Cir.1982).