Barbara A. PELLI, Plaintiff,

v.

STONE SAVANNAH RIVER PULP AND PAPER CORPORATION, Defendant.

Civ. A. No. 494–120.

United States District Court,
S.D. Georgia,
Savannah Division.

Jan. 20, 1995.

Gregory V. Sapp, Savannah, GA, for plaintiff.

Ryburn Clay Ratterree, Savannah, GA, Philip N. Storm, Chicago, IL, for defendant.

## ORDER

ALAIMO, District Judge.

Plaintiff, Barbara Pelli ("Pelli"), brings this federal question action against Defendant, Stone Savannah River Pulp and Paper Corporation ("Stone"), under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended. Pelli contends that she was denied employment as a mechanical maintenance electrician by Stone because of her gender. Pelli also alleges that Stone's hiring practices, while seemingly neutral, have the effect of preventing women from being hired as electricians at Stone.

This case is presently before the Court on Stone's motion for summary judgment pursuant to Fed.R.Civ.Pro. 56. Stone argues that Pelli has failed to make out a *prima facie* case of sex discrimination, and that Stone has presented a legitimate, nondiscriminatory reason for its failure to hire Pelli. Stone also contends that Pelli has not shown any factual basis for her claim that Stone's hiring practices discriminate against women. For the reasons discussed below, summary judgment for Stone will be **GRANTED.**

## FACTS

Pelli applied for a job as a maintenance electrician at Stone's pulp mill in Savannah on March 12, 1992. Pelli was one of five applicants, and the only female, chosen to be interviewed for the position. Stone hired John Wade ("Wade"), one of the four males interviewed, on May 28, 1992.

Stone's maintenance department consists of approximately 100 skillcraft[1] mechanics who are assigned to the various production areas. The maintenance electricians generally perform repair, maintenance, and troubleshooting work on machines in the plant. Stone sought to hire an electrician proficient in the electrical functions performed at the plant, and with secondary skills in other mechanical or maintenance areas. Specifically, Stone was looking for:

(1) repair, maintenance and troubleshooting experience comparable to the tasks performed at the mill, such as repair/maintenance/troubleshooting experience involving motors, switchgear, other control devices and electrical equipment; (2) experience with AC drives and DC drives, including both electronic drives and motor generator sets and, if possible, experience with Distributive Control System controls; and (3) training and experience in high voltage electrical work. In addition, we looked for leadership skills and a minimum of two years electrical experience as a journeyman electrician in the successful candidate.

Affidavit of Max Sellars at 2.

The selection process at Stone consists of a written aptitude test and a panel interview. The panel of interviewers for this position consisted of Gary Templeton, the electrical/instrumentation superintendant, Max Sellars, an electrical/instrumentation supervisor, and Phillip Sullivan, an hourly electrician. The panel made a written evaluation of each of the five candidates. This score was added to the objective score on the written test to achieve a final score. Pelli ranked fourth out of the five candidates.

At the time Pelli applied for the maintenance electrician job, she had worked for approximately one year at various jobs as a journeyman electrician. Most of her experience has been as a construction electrician, doing installation and hookup work. Her prior maintenance electrician experience is limited to work splicing lines for the telephone company, which she concedes is not really comparable to the work at Stone. Pelli has rarely done any high voltage work, and she has never worked on "live" or "hot" high voltage wires.

---

1. A skillcraft mechanic is one who possesses a primary skill, such as electrician, but also has secondary skills which are needed in the plant. The idea behind having skillcraft mechanics is to remove rigid craft lines in a union shop and have maintenance employees who can perform varied tasks.

Stone hired Wade, the highest-ranked candidate for the maintenance electrician position. Wade has more than twenty years experience as an electrician. He has extensive prior experience in repairing, maintaining, and troubleshooting electrical equipment like that used at Stone, including rebuilding generators, repairing high voltage distribution systems, testing live high voltage wires, and working with AC and DC motor controls.

Unlike the other four candidates, Wade is a journeyman lineman as well as a journeyman wireman. Wade also has a secondary skill as a certified welder. He has been welding for 30 years and has been recertified at higher levels at least four times. He has two years of college, National Guard training, and has been a foreman on several jobs.

After the decision was made to hire Wade, Stone's electrical and instrumentation superintendent, Gary Templeton, called Pelli and encouraged her to reapply for the next electrician job opening. He states that he was "very impressed" with Pelli, but that "there's not that many John Wade's out there," and that the interviewers felt Pelli needed more experience. Affidavit of Gary Templeton at 56–58.

There has never been a female electrician at Stone. Pelli and Barbara Hodges, an oiler in the maintenance department at Stone, are the only females who have applied for electrician positions while Templeton has been the electrical and instrumentation superintendent.

Pelli claims that the electricians at Stone are resistant to working with a female electrician, and that this bias taints the interview process at Stone, since electricians are part of the interview panel. Additionally, Pelli believes that Stone's practice of "checking out" prospective employees with the union allows negative perceptions of women into the hiring process. Pelli knows of no negative statements made by Stone employees about her application for employment. She does cite one comment made by a maintenance worker to Barbara Hodges that "management is not the only one that doesn't want women in the electrical department," as evidence of the discriminatory attitude at Stone. Deposition of Pelli at 226.

Pelli filed this suit under Title VII, claiming that she was not hired as an electrician by Stone because she is female. She states that she is as qualified as Wade for the position at Stone, and that Wade is overqualified and has skills not used by maintenance electricians at Stone. She also claims that Stone has hired electricians with similar experience to hers in the past. Pelli argues that she received disparate treatment in the interview process because she is female, and that the process itself has a disparate impact on women applicants, because it uses subjective opinions as part of the basis for hiring.

## DISCUSSION

### I. Summary Judgment

Summary judgment requires the movant to establish the absence of genuine issues of material fact, such that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Lordmann Enterprises, Inc. v. Equicor, Inc.*, 32 F.3d 1529, 1532 (11th Cir.1994). After the movant meets this burden, "the non-moving party must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Co., Inc.*, 32 F.3d 520, 524 (11th Cir.1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). The non-moving party to a summary judgment motion need make this showing only after the moving party has satisfied its burden. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). The court should consider the pleadings, depositions and affidavits in the case before reaching its decision, Fed.R.Civ.P. 56(c), and all reasonable inferences will be made in favor of the non-movant. *Griesel v. Hamlin*, 963 F.2d 338, 341 (11th Cir.1992).

### II. Title VII Claims

"A plaintiff may establish a prima facie [Title VII case] in three ways: by presenting direct evidence of discriminatory intent; by meeting the test [premised on circumstantial evidence] set forth in McDonnell Douglas [citation omitted]; or by demonstrating through statistics a pattern of discrimina-

tion." *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir.1990).

■ Direct evidence is "evidence which, if believed, 'establishes discriminatory intent without inference or presumption.'" *Kelly v. K.D. Construction of Fla., Inc.*, 866 F.Supp. 1406 (S.D.Fla.1994) (quoting *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1226 (11th Cir.1993)). When the evidence of discriminatory intent is direct, once the plaintiff proves a discriminatory motive, the defendant can only rebut it "by *proving* by a preponderance of the evidence that the same decision would have been reached even absent the presence of that factor." *Bell v. Birmingham Linen Service*, 715 F.2d 1552, 1557 (11th Cir.1983), *cert. denied*, 467 U.S. 1204, 104 S.Ct. 2385, 81 L.Ed.2d 344 (1984) (emphasis in original) (quoting *Lee v. Russell County Bd. of Education*, 684 F.2d 769, 774 (11th Cir.1982)).

When the evidence presented is circumstantial, the Supreme Court's disparate treatment cases provide the appropriate framework for evaluating claims of sex-based discrimination under Title VII. *Batey v. Stone*, 24 F.3d 1330, 1333 (11th Cir.1994); *Meeks v. Computer Associates Int'l*, 15 F.3d 1013 (11th Cir.1994). In *McDonnell Douglas Corp. v. Green*, the Supreme Court found that "[t]he complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of [racial] discrimination." 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). The Supreme Court clarified this finding in *Texas Dept. of Community Affairs v. Burdine*, stating that:

> Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee. If the trier of fact believes the plaintiff's evidence, and if the employer is silent in the face of the presumption, the court must enter judgment for the plaintiff because no issue of fact remains in the case.

450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981).

■ Under *McDonnell Douglas*, the plaintiff establishes a *prima facie* case of discrimination in hiring by showing:

1) that she or he is a member of a protected class; 2) that she or he applied and was qualified for a job for which the employer was seeking applicants; 3) that despite her or his qualifications, she or he was rejected; and 4) that after this rejection the position remained open or was filled by a person not within the protected class.

*Welborn v. Reynolds Metals Company*, 810 F.2d 1026, 1028 (11th Cir.1987), *reh'g denied, en banc*, 815 F.2d 717 (11th Cir.1987) (citing *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824).

■ Once the plaintiff establishes a *prima facie* case, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. "The defendant need not persuade the court that it was actually motivated by the proffered reasons. [citation omitted] It is sufficient [to meet the burden of production] if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094. However, the defendant must "clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant." *Id.* at 255, 101 S.Ct. at 1094 (footnote omitted). Once the defendant has met this burden of production, the presumption in favor of the plaintiff, raised by establishing a *prima facie* case, is rebutted. *Id.*

■ Finally, if the defendant rebuts the *prima facie* case, the plaintiff, who throughout retains the burden of persuasion, must then "show by the preponderance of the evidence that the defendant's legitimate reasons were not the reasons that actually motivated its conduct, that the reasons were merely a 'pretext for discrimination.'" *MacPherson v. University of Montevallo*, 922 F.2d 766, 774 (11th Cir.1991) (quoting *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095). "This burden now merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination. She may succeed in this either directly by persuading the court that a discriminatory rea-

son more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095.

 In determining whether the defendant's reason is pretextual, a court may consider evidence originally submitted by the plaintiff to establish the *prima facie* case. As the Court noted in *Burdine,* "there may be some cases where the plaintiff's initial evidence, combined with effective cross-examination of the defendant, will suffice to discredit the defendant's explanation." *Id.* Nevertheless, "[i]n some cases, the defendant's evidence of a legitimate, non-discriminatory reason for its actions may be so strong as to rebut completely the inference raised by the plaintiff's prima facie case" and, then, the plaintiff must introduce additional evidence of pretext. *Grigsby v. Reynolds Metals Co.,* 821 F.2d 590, 596 (11th Cir.1987). The plaintiff's evidence must be more than "[m]ere conclusory allegations and assertions," *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1081 (11th Cir.1990), and should be "significantly probative ... that the proffered reason is a pretext for discrimination." *Carter v. City of Miami,* 870 F.2d 578, 584 (11th Cir.1989).

## A. Direct Evidence of Disparate Treatment

 Pelli has presented no direct evidence of a discriminatory motive for Stone's failure to hire her as an electrician. Pelli admits in her response to the motion for summary judgment that she can show no specific statement by any Stone supervisor indicating a discriminatory attitude toward females. The one comment by a maintenance worker that "management is not the only one that doesn't want women in the electrical department," if accepted as true, does not constitute direct evidence of discriminatory intent. "Stray remarks in the workplace, remarks by non-decisionmakers, and statements by decisionmakers unrelated to the decisional process are not direct evidence." *Stone v. Galaxy Carpet Mills, Inc.,* 841 F.Supp. 1181, 1185 (N.D.Ga.1993) (citing *Price Waterhouse v. Hopkins,* 490 U.S. 228, 277, 109 S.Ct. 1775, 1804–05, 104 L.Ed.2d 268 (1989) (O'Connor, J., concurring in judgment)).

## B. Circumstantial Evidence of Disparate Treatment

 Pelli has presented a *prima facie* case of discrimination in hiring under *McDonnell Douglas.* As a woman, she is a member of a protected class. She applied and was qualified for a job which Stone sought to fill. Despite her qualifications, she was rejected, and the position was filled by a man, a person not within the protected class.

 Stone argues that Pelli was not qualified for the job of maintenance electrician, because she did not have two years' experience as a journeyman electrician, and had little or no experience in electrical repair, maintenance, and troubleshooting. In the past Stone has hired electricians with less than two years' experience, and has hired electricians whose experience is primarily in construction rather than maintenance. Considering these facts in a light favorable to Pelli, the non-movant, Pelli is qualified to be a maintenance electrician at Stone.

 Stone has, however, articulated a legitimate, nondiscriminatory reason for its failure to hire Pelli. Wade, the applicant hired by Stone for the position of maintenance electrician, was the most qualified applicant. "The promotion of an employee who is deemed more qualified than the plaintiff for the position in question is a legitimate, nondiscriminatory reason." *Williams v. Mead Coated Bd., Inc.,* 836 F.Supp. 1552, 1571–72 (M.D.Ala.1993), *aff'd* 41 F.3d 668 (11th Cir.1994) (citing *Olafson v. Dade Co. School Bd.,* 651 F.2d 393, 395 (5th Cir. July 1981)).

It is undisputed that Wade has more experience in maintenance, repair, and troubleshooting with electrical equipment like that used at the Stone plant, is a journeyman lineman as well as a journeyman wireman, has welding skills which can be used on other maintenance jobs at Stone, and has leadership experience as a foreman. Wade is simply better qualified for the job than Pelli. Pelli argues that he is "overqualified," which

seems to the Court tantamount to an admission that Stone's proffered reason for hiring Wade over Pelli is legitimate.

Pelli has not met her burden of showing by a preponderance of the evidence that Stone's legitimate, nondiscriminatory reason is merely a pretext for discrimination. She has cited Stone's refusal to transfer Barbara Hodges from her job as an oiler to a job as an electrician, and Stone's failure to promote Margaret Bailey to a supervisory position within the maintenance department as evidence of a discriminatory motive. She has not, however, connected these decisions made about current employees with the decision not to hire her. She has not shown the circumstances surrounding these decisions, or who made these decisions.

■ Pelli has made conclusory allegations of discrimination, which are insufficient to raise an inference of pretext "where [defendant] has offered such extensive evidence of legitimate, nondiscriminatory reasons for its actions." *Grigsby v. Reynolds Metals Co.*, 821 F.2d at 597; *see Stone*, 841 F.Supp. at 1186 (stating that, when employer hires most qualified person, claim of pretext generally fails) (citing *Smith v. Horner*, 839 F.2d 1530, 1538 (11th Cir.1988)). Summary judgment for Stone is thus appropriate on Pelli's claim of disparate treatment.

## C. Statistical Evidence of Disparate Impact

■ Pelli asserts that Stone's facially neutral hiring practices of requiring an interview by a panel of electricians employed in the maintenance department, and of considering opinions of union members and current employees, have a discriminatory effect on women. Title VII forbids "practices that are fair in form, but discriminatory in operation." *Griggs v. Duke Power Co.*, 401 U.S. 424, 431, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971).

■ There are two steps for the plaintiff to satisfy in making out a *prima facie* case of disparate impact. The plaintiff must first show an imbalance in the workforce through statistics. The proper comparison is "between the [racial] composition of the qualified persons in the labor market and the persons holding at-issue jobs." *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 650, 109 S.Ct. 2115, 2121, 104 L.Ed.2d 733 (1989). Then, "a plaintiff must demonstrate that it is the application of a specific or particular employment practice that has created the disparate impact under attack." *Id.* at 657, 109 S.Ct. at 2125. Disparate impact analysis can be applied to subjective hiring criteria as well as to standardized selection practices. *Watson v. Ft. Worth Bank & Trust*, 487 U.S. 977, 990, 108 S.Ct. 2777, 2786, 101 L.Ed.2d 827 (1988).

■ Once the plaintiff has made her *prima facie* case, the burden of production shifts to the defendant "to demonstrate that the challenged practice is job related for the position in question and consistent with business necessity." 42 U.S.C. § 2000e–2(k)(1)(A)(i)[2] The Court will not reach this step, however, because Pelli has not met her initial burden of demonstrating an employment practice which has a disparate impact on females at Stone.

Pelli has not made the required showing of statistical imbalance. She states that in 1990–91 less than 5 of the approximately 233 electrician applications Stone received were from females. She also cites the deposition testimony of the personnel supervisor at Stone, Eugene A. Branch, III, in which he "guesses" that females made up seven percent of the pool of electricians in the Savannah area in the 1990 census. Pelli must show a comparison between the gender composition of electricians in the relevant labor market and the gender composition of electricians at Stone. This she has not done.

Pelli has not presented evidence to the Court proving what the relevant labor market is. There is no concrete proof in the record of the number of female electricians in the Savannah area. Pelli has not even stated how many electricians work at Stone. Pelli has given the Court insufficient evidence to make any conclusions based on statistics. Without an analytical foundation, the recita-

---

**2.** This requirement was added to Title VII by the Civil Rights Act of 1991, modifying the *Wards* *Cove* requirement of a business justification for employment practices.

tion of bare statistics is "virtually meaningless." *Stone*, 841 F.Supp. at 1188; *see Cerrato v. San Francisco Comm. College Dist.*, 26 F.3d 968 (9th Cir.1994) (in evaluating disparate impact claim, court may reject flawed data as inadequate or unreliable).

 While Pelli has identified two specific employment practices which she contends are discriminatory, she has not shown that these practices created a disparate impact on women applicants for electrician jobs at Stone. Merely showing an imbalance in the workforce is not enough. *MacPherson*, 922 F.2d at 771. There must be

> statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group.

*Watson*, 487 U.S. at 994, 108 S.Ct. at 2789. Because Pelli has not presented the Court with the relevant labor market statistics required for a *prima facie* case of disparate impact, she has failed to demonstrate the existence of an essential element of her case. Summary judgment for Stone will be granted on Pelli's claim of disparate impact.

### CONCLUSION

For the reasons discussed above, summary judgment for Stone is **GRANTED** on Pelli's claim under Title VII for discrimination on the basis of gender. The clerk is directed to enter an order of dismissal.

**SO ORDERED.**