NORTH AMERICAN OIL COMPANY, INC., Plaintiff,

v.

STAR BRITE DISTRIBUTING, INC., Defendant.

No. 1:98–CV–1589.

United States District Court, N.D. Georgia, Atlanta Division.

March 30, 2001.

William Arthur Capp, Steven David Kerr, Michael Anthony Cicero, Womble, Carlyle, Sandridge & Rice, Atlanta, GA, for plaintiff.

Alan H. Bernstein phv, Caesar, Rivise, Bernstein, Cohen & Pokotilow, Philadelphia, PA, Stephen Robert Risley, Thomas, Kayden, Horstemeyer & Risley, Atlanta, GA, Leonard K. Samuels, phv, Jeffrey S. Wertman, phv, Berger, Davis & Singerman, Fort Lauderdale, FL, for defendants.

## ORDER

STORY, District Judge.

Before the Court for consideration are North American Oil Company, Inc.'s ("North American") Motion for Order Requiring Production of Dornau Transcript [0–0], North American's Motion for Partial Summary Judgment [262–1] and Star Brite Distributing, Inc.'s ("Star Brite") Motion for Attorney's Fees for September 13, 2000 motion to strike [333–1]. After reviewing the record and considering the arguments of the parties, the Court enters the following Order.

## BACKGROUND

North American brings this action primarily seeking either a declaration that Star Brite's patent for a liquid electrical tape formulation is invalid or unenforceable or a declaration that North American's product does not infringe Star Brite's patent. Star Brite filed the patent application on April 10, 1991. The patented formulation forms "a durable vinyl coating or film on wires, junctions and objects." United States Patent 5,250,598 (issued Oct. 5, 1993) ("the '598 patent"). Star Brite's liquid electrical tape includes the following components: (1) a vinyl chloride copolymer consisting of vinyl chloride and vinyl acetate, (2) a vinyl toluene/acrylate copolymer thickener or thixotropic agent, (3) a plasticizer for flexibility, (4) an epoxy stabilizing agent to prevent acid release at elevated temperatures, and (5) at least one solvent. *Id.* The patent also claims that the "principal object" of the invention is to provide a product with a good shelf life. *Id.*

## Motion for Partial Summary Judgment

North American moves for partial summary judgment on the issues of invalidity and unenforceability of the '598 patent. North American offers evidence to show that Star Brite's invention was anticipated or obvious, that Star Brite misjoined inventors, and that Star Brite committed fraud on the patent office by failing to disclose relevant prior art to the United States Patent & Trademark Office ("PTO"). Pursuant to the Court's January 29, 2001 Order, the following evidence previously submitted will not be considered in ruling on this motion: Dr. Rubner's expert report, Harry Manbeck's expert report, Second Supplement to the Initial Expert Report of Patrick H. Woods, Ph.D., Certificate of Counsel Relating to Chain of Custody of Certain Physical Exhibits; Second Supplemental Affidavit of Cal Yudin, Affidavit of B.G. Dhake, Supplemental Affidavit of Frank Glinski, and Affidavit of Mark Alois Quade.

## Standard for Decision

Rule 56(c) of the FEDERAL RULES OF CIVIL PROCEDURE provides that a district court shall grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is (1) no genuine issue as to any material fact and that (2) the moving party is entitled to judgment as a matter of law." The moving party bears the burden of showing the absence of a genuine issue as to any material fact. The applicable substantive law identifies which facts are material, and a fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986). An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* at 249–50, 106 S.Ct. at 2510–11. The Court must view materials submitted in favor of the motion in the light most favorable to the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Isenbergh v. Knight–Ridder Newspaper Sales, Inc.*, 97 F.3d 436 (11th Cir. 1996); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir.1991).

> For issues on which the movant would bear the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial. In other words, the moving party must show that, on all essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party. If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the non-moving party, in response, come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact.

*Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir.1993) *quoting U.S. v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir.1991) (en banc). If the movant fails to satisfy this heavy initial burden, then the motion must be denied and the court need not consider what showing the non-movant has made. *Coats & Clark*, 929 F.2d at 608.

Once the movant has satisfied this burden, the non-moving party must show the presence of a disputed material fact. The non-moving party cannot rely on her pleadings, but must file a response which includes other evidence showing that there is a genuine issue for trial. FED. R. CIV. P. 56(e); *Combs v. Plantation Patterns*, 106 F.3d 1519 (11th Cir.1997); *Isenbergh*, 97 F.3d at 436. Mere conclusory allegations and assertions are insufficient to create a disputed issue of material fact. *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir.1990); *Pelli v. Stone Savannah River Pulp and Paper Corp.*, 878 F.Supp. 1559, 1565 (S.D.Ga.1995); *Mack v. W.R. Grace Co.*, 578 F.Supp. 626, 630 (N.D.Ga. 1983);. A genuine issue of material fact only exists if there is sufficient evidence favoring the non-moving party for a reasonable jury to return a verdict in its favor. *Anderson*, 477 U.S. at 249–51, 106 S.Ct. 2505; *Thornton v. E.I. Du Pont De Nemours and Co.*, 22 F.3d 284, 288 (11th Cir.1994). One district court noted, "Even if the moving party comes forward with an abundance of evidence supporting its theory of the case, the nonmoving party may nevertheless defeat the motion by countering with evidence of his own, which, if credited by the fact-finder, would entitle the nonmoving party to a verdict in his favor." *Ziolkowski v. Caterpillar, Inc.*, 800 F.Supp. 767, 778 (E.D.Wis.1992).

## Discussion

In this action, North American seeks a declaratory judgment as to the invalidity and/or unenforceability of Star Brite's patent. A patent holder may normally bring an infringement action against an alleged infringer, seeking injunctive relief and damages for patent infringement. In that situation, the alleged infringer might raise the affirmative defenses of invalidity and unenforceability to avoid liability for infringement. Here, the tables are turned. North American wishes to have the patent at issue declared invalid or unenforceable, and Star Brite counterclaims for infringement. However, the burdens of proof are allocated just as they would be in an infringement action-Star Brite bears the burden of proof on infringement and North American bears the burden of proof on its affirmative defenses of invalidity and unenforceability.

### A. Invalidity

A patent is presumed valid. 35 U.S.C. § 282. The one challenging validity must show by clear and convincing evidence that the patent is invalid. *Hybritech, Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1375 (Fed.Cir.1986), *cert. denied*, 480 U.S. 947, 107 S.Ct. 1606, 94 L.Ed.2d 792 (1987). All evidence bearing on the invalidity issue is to be considered whether it was presented to patent examiner or not. *Structural Rubber Prods. v. Park Rubber*, 749 F.2d 707, 714 (Fed.Cir.1984). Introducing prior art not before the examiner facilitates meeting the burden of proof on invalidity. *Hybritech*, 802 F.2d at 1375.

In an infringement action, the presumption of validity would allow Star Brite to avoid offering evidence to prove validity, novelty, and non-obviousness as a part of its *prima facie* case of infringement. However, the presumption would not protect the patent from affirmative defenses to infringement that North American might raise, including invalidity for lack of novelty or obviousness, if those affirmative defenses were proven by clear and convincing evidence. *See Jervis B. Webb Co. v. Southern Sys., Inc.*, 742 F.2d 1388, 1392 n. 4 (Fed.Cir.1984) (noting that presumption remains intact throughout litigation and clear and convincing evidence standard applies). Therefore, if North American can prove its defenses to infringement by clear and convincing evidence, and Star Brite does not dispute this proof with its own evidence, then North American is entitled to summary judgment in spite of the presumption of validity. In other words, the presumption is rebuttable and can be overcome by undisputed clear and convincing evidence. *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530 (Fed.Cir.1983) (noting that presumption of validity is rebuttable).

In the instant case, North American seeks to rebut the presumption of patent validity, arguing that there are three bases for declaring United States Patent 5,250,-598 ("the '598 patent") invalid: (1) anticipation or lack of novelty, (2) obviousness, and (3) misjoinder of inventors. These three legal theories will be considered in turn.

#### 1. Anticipation or Lack of Novelty

An invention is not entitled to a patent if it "was known or used by others in this country or patented or described in a printed publication in this or a foreign country before the invention thereof by the applicant for the patent." 35 U.S.C. § 102(a). If a single piece of relevant prior art [1] contains all elements of the

---

1. Prior art "includes any relevant knowledge, acts, descriptions and patents which pertain to, but predate, invention in question." BLACK'S LAW DICTIONARY 1193 (6th ed.1990); *Infodek, Inc. v. Meredith–Webb Printing Co., Inc.*, 830 F.Supp. 614, 623 (N.D.Ga.1993) (quoting this definition).

claimed invention, either explicitly or inherently, then it anticipates the product. *Hazani v. U.S. Int'l Trade Comm.*, 126 F.3d 1473, (Fed.Cir.1997); *Structural Rubber Prods. Co. v. Park Rubber Co.*, 749 F.2d 707, 715 (Fed.Cir.1984); *See Continental Oil Co. v. Cole*, 634 F.2d 188, 195 (5th Cir.1981)[2] (stating that prior art reference must contain all elements in substantially same situation doing substantially same work). A prior art reference may anticipate the invention by inherency when the teachings of the reference would be appreciated by one with ordinary skill in the art. *Glaxo, Inc. v. Novopharm Ltd.*, 52 F.3d 1043, 1047 (Fed.Cir.1995), *cert. denied*, 516 U.S. 988, 116 S.Ct. 516, 133 L.Ed.2d 424 (1995). Although a single reference must disclose every limitation of the patent claims, additional references may be used to show how a person with ordinary skill in the art would have understood the teachings of the primary reference. *Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1576–77 (Fed.Cir.1991). If the reference does not disclose exactly what is claimed, then invalidity must be declared on the basis of obviousness under 35 U.S.C. § 103, which takes differences in the invention and the prior art reference into account. *Titanium Metals Corp. of America v. Banner*, 778 F.2d 775, 780 (Fed.Cir.1985). While anticipation is a question of fact, summary judgment may be granted on this issue if the court determines that there is no dispute as to the material facts supporting a claim of anticipation. *Scripps*, 927 F.2d at 1576.

North American suggests that four prior art references anticipated all the claims of the Star Brite patent: (1) HENRY FLEMING PAYNE, ORGANIC COATING TECHNOLOGY, Vol. I, 499–514 (1954), (2) Union Carbide product brochures describing the uses of vinyl resins and stabilizers, (3) MDR's vinyl products *Liquid Lectric Tape* and *Whip–End Dip*, and (4) a journal article authored by Butters and Roberts which appeared in a 1971 issue of *Journal of Applied Polymer Science*. (Pl.'s Br. in Support of Mot. for Partial Summ. J. at 43.) Star Brite has not disputed the fact that these references preceded the invention of Star Brite's patented liquid electrical tape formula, so the Court now considers whether there is a dispute of fact related to anticipation.

In response to these cited references, Star Brite first reminds the Court that its patent is presumptively valid, asserting that North American has failed to meet its burden to overcome that presumption. (Def.'s Br. in Opp'n to Mot. for Partial Summ. J. at 37.) Even so, as explained above, North American can overcome this presumption of validity with undisputed clear and convincing evidence. Next, Star Brite argues that North American mischaracterizes its invention by grouping it with other vinyl coatings and not in the more limited class of liquid electrical tape products. (*Id.* at 5–6, 37.) According to Star Brite, this mischaracterization would allow consideration of non-electrical tape products, or irrelevant prior art in determining whether the invention was anticipated. (*Id.* at 38.) The Court finds this line of reasoning unpersuasive because a liquid electrical tape formulation is by its very nature a vinyl coating. Since Star Brite's product fits squarely into the category of vinyl coatings, the differentiation based on the use of the coating as an electrical tape is illusory. The Court will now consider each allegedly anticipatory reference cited by North American.

---

**2.** The United States Court of Appeals for the Eleventh Circuit has adopted as binding precedent the decisions of the United States Court of Appeals for the Fifth Circuit handed down prior to September 30, 1981. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (1981).

First, the Court has reviewed the relevant chapter of HENRY FLEMING PAYNE, ORGANIC COATING TECHNOLOGY, Vol. I, 499–514 (1954). The submitted pages discuss vinyl chloride-acetate copolymers like VYHH–1 (*Id.* at 499, 509), noting that these copolymers can be dissolved in common solvents like toluene mixtures (*Id.* at 502, 505), mixed with a plasticizer like dioctyl phthalate to enhance film-forming properties, (*Id.* at 504, 505, 508), and combined with solvents and dilutents to control thickness (*Id.* at 504). Payne also notes that a vinyl chloride-acetate copolymer is the one most widely used in coatings (*Id.* at 502). Moreover, the Payne work includes formulas that form a coating when air-dried or baked. (*Id.* at 511–512). While the treatise notes these combinations and suggests that other modifiers might be added, the Court finds no reference in the submitted pages to a stabilizing agent, and the author notes that certain combinations of these ingredients will gel (*Id.* at 504). However, North American alleges in its Statement of Material Facts that the art of using stabilizers in conjunction with the other ingredients of Star Brite's liquid electrical tape was taught in Volume 2 of Payne's work. (Pl.'s Statement of Material Facts at 4, Fact. No. 7) (hereinafter "SMF".) Star Brite does not dispute the fact that Volume 2 included this teaching. *See* (Def.'s Resp. to SMF, Fact No. 7.) Defendant's response denies Plaintiff's Fact No. 7 and refers the Court to its response to Fact No. 4. That response states that Volume I was in the library available to North American's formulators but was never consulted. In addition, according to Star Brite, the Payne treatise does not discuss holding liquid electrical tape in a unlined, metal container. This response does not dispute the fact that Payne taught the use of a stabilizer; moreover, the fact that no one consulted the Payne treatise is immaterial to the anticipation question. The anticipation inquiry does not consider whether others looked at the anticipatory reference but simply whether one prior art reference includes all elements of the invention sought to be patented. Furthermore, the claims of the patent do not refer to storing the formulation in an unlined container, and only the descriptive section makes a reference to maintaining the liquid electrical tape in a "metal" container without the limitation that the container shall be unlined. Therefore, Star Brite has failed to raise a genuine issue of material fact as to whether the Payne work anticipated the '598 patent, and the Court finds that each element of Star Brite's "invention" was discussed in Payne's ORGANIC COATING TECHNOLOGY. In fact, Payne suggested mixing these elements to create a vinyl coating. Hence, Star Brite's patent is invalid because the invention was anticipated by prior art.

█ While it is not necessary to discuss the other cited references in light of the finding that Payne's work anticipated the '598 patent, the Court will analyze the other references cited by North American. Second, North American cites Union Carbide product brochures describing the uses of vinyl resins and stabilizers as anticipating prior art. There are separate brochures for Union Carbide's stabilizer product and for vinyl resins used for coatings. The Union Carbide literature does not anticipate the Star Brite invention, though it might be relevant for the obviousness analysis below. Even North American's expert, Mr. Woods, acknowledges that the vinyl resin brochure produced by Union Carbide teaches only four of the five elements of Star Brite's vinyl coating product. This reference does not discuss the use of a vinyl toluene/acrylate copolymer thixotropic agent, a major component of the patent's claims.

In response to the citation of the UCAR reference, Star Brite contends that the publication merely describes coatings, sheets, or films but does not discuss problems related to storage in an unlined metal container. In addition, Star Brite points out that this publication neither discusses producing a liquid electrical tape formulation nor directs the reader to mix the components described together. (Def.'s Resp. to SMF at 39.) While Star Brite does not adequately dispute North American's Fact Nos. 30–34, the Court points out that the facts as stated by North American do not show that the Union Carbide publication teaches the thickener element of Star Brite's product. *See* (Pl.'s SMF, Fact No. 34) (stating that Union Carbide product information discusses the use of fillers like talc, clay, baryte, and silica as thickeners.) Even though the product information refers to thickening agents, it does not use the same type of thickener that is used in the Star Brite liquid electrical tape. For this reason, North American does not meet its initial burden of affirmatively showing that there is no dispute of a material fact as to the Union Carbide literature. This reference does not fully anticipate Star Brite's claimed invention.

Third, North American asserts that MDR's Liquid Electrical tape and Whip–End Dip products are anticipatory references. Plaintiff argues that the MDR formula is almost identical to the patented formula. North American states that the MDR product line included each element of Star Brite's patented formulation, relying on the Glinski deposition. (Pl.'s SMF, Fact Nos. 18–20.) In response, Star Brite tells the Court that Mr. Glinski cannot be trusted because he is in violation of a subpoena and that the quantities in MDR's formula are unknown. (Def.'s Resp. to Pl.'s SMF at 10.) The Court first notes that Star Brite cannot raise an issue of material fact by questioning Mr. Glinski's credibility without offering evidence to show that the witness has not been forthright. The fact that the quantities of the ingredients in MDR's formula are not known does not preclude a finding by the Court that MDR's Liquid Lectric Tape anticipated Star Brite's invention. Star Brite has not disputed the fact that MDR produced a formula containing each element of Star Brite's formula prior to the application for the '598 patent. In fact, Star Brite admits that North American's evidence shows: (1) as early as 1967 MDR began marketing Whip–End Dip, a vinyl/solvent based coating product, (2) around 1973 customers contacted MDR to report the discovery that Whip–End Dip was useful for use as a vinyl coating on wires, and (3) in the early 1970s, MDR advertised Whip–End Dip as useful for coating wires. (Def.'s Resp. to Pl.'s SMF at 8.) These facts show that MDR was making a product similar to Star Brite's liquid electric tape well before Star Brite introduced its product. For these reasons, the MDR products independently invalidate the '598 patent because they anticipate its claims.

Finally, the Butters and Roberts article considers the viscosity of vinyl resin mixtures. *See* Butters, G. and Roberts, G., *J. of Applied Polymer Science,* Vol. 15 (1971). The study used a mixture of vinyl resin and solvents, and it suggested addition of stabilizers, fillers, pigments, viscosity modifiers, organic solvents, and blowing agents. Butters and Roberts showed that vinyl copolymers, solvents, plasticizers, fillers or thickeners, and stabilizers could be combined to produce a solution of varying thicknesses. Star Brite contends that the Butters and Roberts reference is insufficient to anticipate its patented formulation because the authors did not suggest a liquid electrical tape formulation or mandate that all the noted elements be mixed together. (Def.'s Br. in Opp'n to Mot. for Partial Summ. J. at 41.) However, North

American counters that the electric insulating properties of vinyl chloride resins was so well-known in 1971 that dielectric properties were inherent in the pastes described by the article. *See Geffner v. Linear Rotary Bearings, Inc.*, 936 F.Supp. 1150, 1181 (E.D.N.Y.1996) (stating that where reference is silent about inherent characteristic gap may be supplied by extrinsic evidence). North American fills this gap by offering an expert's statement about the well-known dielectric properties of vinyl resins following the publication of the Payne treatise in 1954. *See* (Initial Expert Report of Patrick H. Woods, Ph.D. at 13.) Star Brite misses the mark when it argues that the article does not suggest mixing the elements together; however, the Butters and Roberts article falls short of anticipating the claims of the '598 patent because it does not discuss the thickening agent used in the patented formula. The article merely refers to a "filler," a reference which the Court did not even initially recognize as contemplating a thickener. The Butters and Roberts article is insufficient to anticipate the claims of the '598 patent.

Because the Payne reference and the MDR reference anticipate the '598 patent, the patent is invalid. Accordingly, North American's motion for partial summary judgment on the issue of anticipation is hereby **GRANTED**.

**2. Obviousness**

■ If an invention is anticipated, it is also invalid as obvious. *Structural Rubber Prods. Co. v. Park Rubber Co.*, 749 F.2d 707, 716 (Fed.Cir.1984). A need to determine obviousness presumes that anticipation is lacking. *Id.* Even so, obviousness will be considered separately as it applies to this case, and the discussion of obviousness will proceed as if the Payne reference and the MDR product references did not fully anticipate Star Brite's invention. An invention is not entitled to a patent if the combination would have been obvious to one having ordinary skill in the art. Title 35 U.S.C. § 103(a) provides,

A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

While anticipation requires that a single prior art reference include all elements of an invention, the obviousness inquiry takes differences between the prior art and the invention into account. Nonobviousness is a question of law to be determined from the facts. *In re Mills*, 916 F.2d 680, 682 (Fed.Cir.1990). Four factual inquiries are relevant to the question of obviousness: (1) the scope and content of prior art; (2) the level of skill in the art; (3) the differences between prior art and the claimed subject matter as a whole; and (4) secondary considerations, or objective indicia of nonobviousness like commercial success, long-felt but unsolved needs, or failure of others to meet those needs, *inter alia. Graham v. John Deere Co.*, 383 U.S. 1, 17–18, 86 S.Ct. 684, 693–4, 15 L.Ed.2d 545 (1966); *Panduit Corp. v. Dennison Mfg. Co.*, 810 F.2d 1561, 1566 (Fed.Cir.1987), *cert. denied*, 481 U.S. 1052, 107 S.Ct. 2187, 95 L.Ed.2d 843 (1987). If the underlying facts are undisputed, then the Court may grant summary judgment on the issue of obviousness. The obviousness inquiry asks whether something in the prior art as a whole suggests the desirability of making a particular combination. *Grain Processing Corp. v. Amer. Maize–Prods. Co.*, 840 F.2d 902, 907 (Fed.Cir.1988). A combination of prior art features will only be deemed obvious if the prior art references

contain a suggestion for so combining their teachings; the hindsight afforded by the invention cannot be used to negate its insight. *In re Fine*, 837 F.2d 1071, 1075 (Fed.Cir.1988).

### a. scope and content of prior art

 Prior art relevant to nonobviousness includes that which is the same as the invention's art and those arts that logically relate to the inventor's concern. *Shatterproof Glass Corp. v. Libbey–Owens Ford Co.*, 758 F.2d 613, 620 (Fed.Cir.1985), *cert. dismissed,* 474 U.S. 976, 106 S.Ct. 340, 88 L.Ed.2d 326 (1985); *See e.g. In re Clay,* 966 F.2d 656, 658–60 (Fed.Cir.1992). Under a very narrow interpretation, the inventor's field of endeavor here is a liquid electrical tape formulation having a good shelf life and forming a durable vinyl coating on wires, junctions and objects. Arts logically related to that concern would include vinyl coatings or similar coatings like rubber.

If a piece of prior art has the same purpose as the invention's purpose, then it is particularly relevant prior art. *Baxter Diagnostics, Inc. v. AVL Scientific Corp.,* 924 F.Supp. 994, 1008 (C.D.Cal.), *modified on other grounds,* 954 F.Supp. 199 (C.D.Cal.1996). Star Brite admits that at least one other liquid electric tape formulation existed prior to its invention. The following facts related to MDR's liquid electrical tape product are not disputed. Around 1984, MDR publicly advertised and sold a product named Liquid Lectric Tape which was described in the MDR catalog as follows: "Now you can protect your electrical connections from damaging corrosion on your equipment in the bilge. Liquid Lectric Tape resists moisture, oil, and acids for lasting protection. Actually places a coating of black vinyl on your wires and cables." (Pl.'s Statement of Material Facts at 10, Fact No. 22); (Def.'s Resp. to Pl.'s SMF at 12.) From 1984 to 1993, MDR Liquid Electric Tape's product

label stated that the product formed a vinyl protective dielectric coating. (Def.'s Resp. to Pl.'s SMF at 13.) In addition, Star Brite failed to dispute the fact that MDR's product contained the same five elements as Star Brite's invention. (Pl.'s SMF, Fact Nos. 18–20); *See* (Def.'s Resp. to Pl.'s SMF at 6–7) (questioning Glinski's credibility but not offering evidence that formula did not contain all elements). Moreover, paragraph 13 of Mr. Glinski's affidavit states that the MDR product contained an ingredient to prevent gelling in the container, giving the product adequate shelf life. Star Brite has not disputed this evidence. *But see* (Def.'s Resp. to Pl.'s SMF at 12) (failing to offer evidence but asserting upon information and belief that MDR had problems with gelling in container).

Star Brite also admits the existence of other vinyl coating products on the market prior to Star Brite's patented formula. These products would, at the very least, be a part of a logically related art. First, MDR's product line included: (1) MDR's Whip–End Dip, used to prevent the ends of sailboat ropes from unraveling; (2) Recoatit, a brush-on vinyl coating used to restore vinyl fabrics; (3) Peel–Away, used on metal surfaces to prevent corrosion; and (4) Liquid Vinyl Anchor Chain Coating, intended to form a protective vinyl coating on anchor chains. *See* (Pl.'s SMF, Fact No. 20); (Def.'s Resp. to Pl.'s SMF at 11) (stating that only evidence of existence of these products is Spiegel deposition but offering no evidence to counter fact that these vinyl products existed.) Second, Star Brite concedes that PDI developed a coating product for tool handles in 1983. (Def.'s Resp. to Pl.'s SMF at 18–19.) Finally, Star Brite also concedes that synthetic rubber resins and vinyl resins are "quite similar." (*Id.* at 19–20.) On that basis, even if, as the inventors testified, Star Brite's previous liquid electrical tape

were rubber, then it would be included as part of the relevant prior art. *See (Id.* at 25) (noting belief that previous Star Brite formulation was rubber).

Publications related to vinyl resins would also qualify as prior art. First, the most relevant reference would be Payne's ORGANIC COATING TECHNOLOGY, which discussed each element of the Star Brite invention. Star Brite fails to dispute the fact that the Payne work included all elements of its invention either in Volume I or Volume II. Second, the Butters and Roberts article considered in relation to anticipation discloses mixture of all elements of the '598 patent except the thickening agent. Third, manufacturers like Union Carbide published extensive product literature on recommended uses of the products. (Def.'s Resp. to Pl.'s SMF at 15.) Union Carbide's literature recommended using VYHH vinyl resin for marine and maintenance applications. (*Id.*) This same literature taught dissolving the vinyl resin in solvents, using a plasticizer with vinyl copolymer resins, and using ERL–4221 as a stabilizer in vinyl coating solutions. (*Id.* at 16–17.) Finally, Goodyear published a product brochure for its AC4 Pliolite, a component of Star Brite's invention, that suggested using the product as a thickener for vinyl coatings. (*Id.* at 18.)

### b. level of skill in the art

A person of ordinary skill in the art is a hypothetical person who is presumed to know the relevant prior art. *In re GPAC, Inc.,* 57 F.3d 1573, 1579 (Fed.Cir.1995). In determining the level of skill in the art, the court may consider factors like the type of problems encountered in the art, prior art solutions to those problems, the rapidity with which innovations are made, the sophistication of the technology, the educational level of inventor, and the educational level of active workers in field. *Environmental Designs v. Union Oil Co.*

*of Cal.,* 713 F.2d 693, 696 (Fed.Cir.1983), cert. denied, 464 U.S. 1043, 104 S.Ct. 709, 79 L.Ed.2d 173 (1984). These factors may not be present in every case, and one or more factors may predominate. *GPAC,* 57 F.3d at 1579.

North American offers evidence that the plastics industry was a mature field in the late 1980s. Colleges and universities taught courses in polymer science and scientific journals related to polymer science were readily available. Formulators in the vinyl coatings field also normally had a college degree. (Woods Initial Expert Report at 41–42.) Star Brite does not dispute Woods' opinion. Instead, Defendant argues that the invention was not obvious to one skilled in the art because Mr. Cannata and Dr. Liutkus of StanChem took a year and a half to develop North American's formula. (Def.'s Resp. to Pl.'s Mot. for Summ. J. at 42.) However, this argument is inapposite because the person of ordinary skill in the art in this context is a person who is presumed to be familiar with all the prior art. *See Endress + Hauser, Inc. v. Hawk Measurement Sys. Pty. Ltd.,* 122 F.3d 1040, 1042 (Fed.Cir. 1997) (stating that person of ordinary skill in art does not refer to particular individual). As shown in the previous section, the prior art in this area is extensive, and a person of ordinary skill in the art will be presumed aware of the prior art references cited above.

### c. differences between prior art and claimed subject matter

When considering the teachings of the prior art, the question is what the combined teachings of those references would have suggested to one of ordinary skill in the art. *GPAC,* 57 F.3d at 1581; *See Baxter Int'l, Inc. v. McGaw, Inc.,* 149 F.3d 1321, 1328 (Fed.Cir.1998) ("references lacking different elements are often com-

bined to reject an application under 35 U.S.C. § 103").

Star Brite baldly asserts that the combinations of prior art offered by North American as indications of obviousness are irrelevant because, with the exception of MDR, they do not deal with a liquid electrical tape formulation. Defendant attempts to exclude MDR as prior art because no one knew what the formula contained. The fact that Star Brite did not know the exact ingredients of MDR's product does not make these products irrelevant. Prior art is relevant if the reference is within the inventor's field of endeavor or reasonably pertinent to the problem confronting the inventor. *Quantachrome Corp. v. Micromeritics Instr. Corp.*, 97 F.Supp.2d 1181, 1186 (S.D.Fla. 2000), (quoting *GPAC*, 57 F.3d at 1577). MDR not only produced a vinyl liquid electrical tape product, but it also produced various other brush-on vinyl coatings. It is difficult to imagine prior art that would fall more squarely within Star Brite's field of endeavor, whether the ingredients are disclosed or not. Taken together, the prior art products and publications described above suggest mixing the elements of the '598 patent to produce vinyl resin products. There is little or no difference between these prior art references and the product for which Star Brite received the '598 patent.

### d. secondary considerations

Secondary considerations for nonobviousness include: commercial success, failed efforts of others, copying by others, unexpected results, and simultaneous development. *See Graham v. John Deere Co.*, 383 U.S. 1, 17–18, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966) (commercial success and failed efforts of others); *Symbol Technologies, Inc. v. Opticon, Inc.*, 935 F.2d 1569, 1578–79 (Fed.Cir.1991) (commercial success and failed efforts of others); *GPAC*, 57 F.3d at 1580 (failure of

others to produce an alternative to the invention); *Specialty Composites v. Cabot Corp.*, 845 F.2d 981, 991 (Fed.Cir.1988) (copying by others); *Hybritech, Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1380 n. 4 (Fed.Cir.1986), *cert. denied*, 480 U.S. 947, 107 S.Ct. 1606, 94 L.Ed.2d 792 (1987) (simultaneous development); *Ashland Oil, Inc. v. Delta Resins & Refractories*, 776 F.2d 281 (Fed.Cir. 1985), *cert. denied*, 475 U.S. 1017, 106 S.Ct. 1201, 89 L.Ed.2d 315 (1986) (copying); *Lindemann Maschinenfabrik GmbH v. American Hoist & Derrick Co.*, 730 F.2d 1452 (Fed.Cir.1984) (unexpected results). For evidence of secondary considerations to be accorded substantial weight, the proponent of those considerations must "establish a nexus between the evidence and the merits of the claimed invention." *GPAC*, 57 F.3d at 1580. Secondary considerations will not make an otherwise unpatentable invention patentable. *Anderson's–Black Rock, Inc. v. Pavement Salvage Co.*, 396 U.S. 57, 90 S.Ct. 305, 307–08, 24 L.Ed.2d 258 (1969).

Star Brite contends that North American failed for a year and a half to produce an alternative to its liquid electrical tape invention. Even in light of North American's "failure" other companies, notably MDR, produced successful liquid electrical tape and vinyl resin products. The existence of these products is not disputed by Star Brite. Instead, Star Brite relies on its ignorance of the ingredients of these products to refute the relevance of these products. No secondary consideration besides failure of others is raised here, and Star Brite has failed to raise a genuine dispute of material fact as to the failure of others to produce a liquid electrical tape or vinyl coating product similar to Star Brite's patented liquid electrical tape.

In sum, the obviousness of the '598 patent is suggested by the extensive scope of

relevant prior art, the undisputed high level of skill in the art, the minimal differences between the prior art references and the '598 patent, and the lack of evidence to substantiate the existence of secondary considerations. Star Brite has failed to raise a genuine issue of material fact as to the four obviousness inquiries. Therefore, North American's motion for partial summary judgment on the issue of obviousness is hereby **GRANTED**.

### B. Unenforceability

■ Administrative regulations impose a duty on a party seeking a patent to disclose information material to patentability to the patent examiner. 37 C.F.R. § 1.56. The regulation provides:

> Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability as defined in this section. The duty to disclose information exists with respect to each pending claim until the claim is canceled or withdrawn from consideration, or the application becomes abandoned.

A patent may be declared unenforceable if a patent applicant fails to satisfy this "duty of candor," and such a failure often is referred to as inequitable conduct or fraud on the PTO. *See Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed.Cir.1995) (noting that patent applicant has duty of candor that can be breached by failing to disclose material information and stating that breach of duty of candor is a matter of law that renders patent unenforceable); *Beckman Instruments, Inc. v. Chemtronics, Inc.*, 439 F.2d 1369, 1378–79 (5th Cir. 1970) (stating that duty of candor is important because patent office does not have research facilities of its own and relies on applicants to cite prior art). To show that Star Brite's patent is unenforceable be-

cause Star Brite behaved inequitably before the U.S. Patent & Trademark Office ("PTO"), North American must make an affirmative showing, by clear and convincing evidence, of: (1) failure to disclose material information known to the applicant and (2) intent to deceive. *LaBounty Mfg., Inc. v. United States Int'l Trade Comm'n*, 958 F.2d 1066, 1070 (Fed.Cir. 1992).

Star Brite warns the Court that granting summary judgment on inequitable conduct is rare because it involves a finding of intent. *KangaROOS U.S.A., Inc. v. Caldor, Inc.*, 778 F.2d 1571, 1573 (Fed.Cir. 1985) (stating that disputed question of intent to deceive is not appropriate for summary judgment); *Sigma–Tau Industrie Farmaceutiche Riunite, S.p.A. v. Lonza, Ltd.*, 62 F.Supp.2d 70, 74 (D.D.C.1999) (citing *ATD Corp. v. Lydall, Inc.*, 159 F.3d 534, 547 (Fed.Cir.1998)) ("In deciding whether to grant or deny summary judgment, the Court must decide whether the evidence respecting culpable intent makes the fact reasonably inferable either way, or whether the evidence is so one-sided that the factual issue of intent may be decided as a matter of law."); *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 828 F.Supp. 1200, 1207 (E.D.N.C.1993) (finding that granting summary judgment for inequitable conduct is "rare"). Even though summary judgment on this issue may be uncommon, it is not foreclosed. *Paragon Podiatry Laboratory, Inc. v. KLM Labs., Inc.*, 984 F.2d 1182, 1190 (Fed.Cir.1993). In responding to the motion, the patentee must present more than conclusory statements or completely unsupportable or conflicting explanations or excuses in order to raise a genuine issue of fact. *Id.*

■ Star Brite again reminds the Court that its patent enjoys a presumption of validity. As previously stated, this presumption of validity is rebuttable. In fact,

in the context of inequitable conduct, the presumption of a patent's validity is "severely eroded" when pertinent or relevant prior art was not considered by the PTO. *Mfg. Research Corp. v. Graybar Elec. Co.,* 679 F.2d 1355, 1363 (11th Cir.1982); *Beckman Instruments,* 439 F.2d at 1374–75 (stating that presumption vanishes in face of prior art that has not been presented to patent office). Since an "extraordinary degree of candor" is required of the patent applicant, even one prior art reference not cited to the examiner overcomes the presumption of validity. *Id.* However, cumulative prior art not cited to the examiner will not weaken the presumption. *Id.*

### 1. Failure to Disclose Material Prior Art

First, a piece of prior art is material if there is a substantial likelihood that a reasonable patent examiner would consider the information important in deciding whether to allow the application to issue as patent. 37 C.F.R. § 1.56; *Halliburton,* 925 F.2d at 1440. This inquiry considers the overall degree of similarity between the omitted references and the claimed invention in light of the other prior art before the examiner. *Baxter Int'l, Inc. v. McGaw, Inc.,* 149 F.3d 1321, 1328 (Fed. Cir.1998). When a patent applicant questions whether a reference is material, then that reference should be disclosed. *LaBounty,* 958 F.2d at 1076. Prior art is relevant if the reference is within the inventor's field of endeavor or reasonably pertinent to the problem confronting the inventor. *Quantachrome Corp. v. Micromeritics Instr. Corp.,* 97 F.Supp.2d 1181, 1186 (S.D.Fla.2000), *quoting, GPAC,* 57 F.3d at 1577.

██ Disclosure of relevant prior art is not required if the prior art would be cumulative of information already before the examiner. *Scripps Clinic & Research Found. v. Genentech, Inc.,* 927 F.2d 1565,

1582 (Fed.Cir.1991). Nonetheless, a withheld reference is material when it discloses a more complete combination of relevant features, even if those features are before the examiner in other references. *LaBounty,* 958 F.2d at 1075–76.

██ It is undisputed that Star Brite disclosed no prior art references to the patent examiner. As discussed in the previous two sections, North American has shown that Star Brite failed to disclose numerous relevant prior art references. These references were material and not cumulative because these pieces of prior art have more relevant features than the prior art cited by the examiner. The examiner cites the following references as prior art: (1) U.S. Patent No. 2,437,513 (issued Sept. 1947) ("the Spessard patent"); (2) U.S. Patent No. 4,447,569 (issued May 1984) ("the Brecker patent"); (3) U.S. Patent No. 4,571,410 (issued Feb. 1986) ("the Nevins patent"); and (4) U.S. Patent No. 4,683,263 (issued Jul. 1987) ("the Taira patent").

The Spessard patent disclosed suspensions containing vinyl chloride-vinyl acetate copolymers, a plasticizer, fillers, and a mixture of solvents. The Brecker patent provides for a polyvinyl chloride resin composition including a plasticizer, filler, and epoxy compound. The mixture is claimed to be suitable as an electrical insulator if the coating is baked on. These references can be distinguished from Star Brite's claimed invention because they are not quick-drying at ambient temperatures.

The Nevins patent claims a vinyl acetate copolymer and solvent mixture including a thickener. Optional components were a plasticizer and U.V. light stabilizer. This compound was used as a caulking substance. During the patent prosecution, Star Brite distinguished this reference on the basis that is was not applied as a film, does not show a coating suitable for wires

and junctions, and fails to show that it will form a durable vinyl coating. Likewise, the Taira patent claims use of a vinyl chloride resin primer, and Star Brite distinguished this reference on the basis that Star Brite's invention was a coating and not a primer.

In contrast to the prior art cited by the patent examiner, MDR's Liquid Lectric Tape was an air-dry product that formed an acceptable coating for wires and junctions. The properties of MDR's product were virtually indistinguishable from the properties of the compound disclosed by the '598 patent. Therefore, the MDR reference was not cumulative, and it was more pertinent to patentability than the prior art considered by the patent examiner.

Star Brite admits knowledge of the MDR Liquid Lectric Tape and Whip–End Dip prior to filing the application for the '598 patent. (Def.'s Resp. to Pl.'s SMF at 45–46.) In addition, Star Brite admits knowledge of 3M's Scotchkote product and Star Brite's own prior liquid electrical tape formula. (Id. at 45–46.) Star Brite also admits knowledge of relevant Union Carbide product literature and Goodyear product literature. (Id. at 47–49.); (Russo Dep. at 10, 70–72.) However, these references may be cumulative of the prior art that was actually before the examiner. Even so, the knowledge and non-disclosure of these relevant prior art references tends to show intent to deceive, which will be discussed below.

Despite its knowledge of the other vinyl coating products, Star Brite argues that these prior art references are not material because their contents were unknown. Arguing that there is no duty to disclose unknown information or items not made public, Star Brite asserts that the three named inventors did not know and still do not know the ingredients of the MDR, PDI, and Scotchkote products. In support of the proposition that "secret" prior art need not be disclosed, Star Brite cites two cases involving non-disclosure of manufacturing processes. See W.L. Gore & Assocs. v. Garlock, 721 F.2d 1540, 1550 (Fed. Cir.1983) (stating that public could not learn about manufacturing process by examining product); Puget Sound Salmon Egg Co. v. Shoshoni, Inc., 321 F.Supp. 104, 112 (D.Idaho 1970) (holding that secret process for producing fish bait eggs was not material prior art because process could not be discerned from examining eggs). These cases do not apply to the situation in the present case because they involved patented manufacturing processes rather than products. In Gore and Puget Sound, the courts determined that someone of ordinary skill in the art could not determine the process of making a product from examining the end result or the product. The situation here is different because the vinyl coating products produced by other companies were readily available, and their ingredients might be determined by observation of the product. One of ordinary skill in the art might learn a great deal from looking at the product itself, even if the production process is secret. For instance, the MDR product label discloses that it is a vinyl coating. The odor of hydrocarbon solvents is recognizable. (Woods Dep. at 17.) The flexibility of the coating shows that a plasticizer was used. (Id. at 45.) In addition, the ingredients of the MDR products and 3M products were printed on the label or were available from Material Data Safety Sheets. (Woods Dep. at 201–203); (Pl.'s Ex. 9.)

Star Brite also states the problem that the invention claimed by the '598 patent solved was shelf life, allowing storage of the solution in unlined cans. Oddly, the '598 patent does not include an "unlined can" limitation. The descriptive section mentions storage in a metal container,

but the claims of the patent only refer to a product with good shelf life. Furthermore, MDR had a successful product of which Star Brite was aware. Star Brite offers no evidence that MDR had shelf life problems with its Liquid Lectric Tape or Whip–End Dip products. Therefore, at the very least, the MDR products were very pertinent to the patent examiner's investigation. In fact, the Liquid Lectric Tape was a vinyl liquid electrical tape product stored in a metal container with no reported shelf life problems.

## 2. Intent

Second, intent to mislead the PTO must be established before a patent will be unenforceable because of inequitable conduct. *LaBounty*, 958 F.2d at 1076. Intent can be inferred from circumstantial evidence. *Hewlett–Packard Co. v. Bausch & Lomb, Inc.*, 882 F.2d 1556, 1562 (Fed.Cir.1989), *cert. denied*, 493 U.S. 1076, 110 S.Ct. 1125, 107 L.Ed.2d 1031 (1990); see also *LaBounty*, 958 F.2d at 1076 (stating that intent may be inferred from clear and convincing evidence of surrounding circumstances). One way to show intent to mislead the PTO is with evidence that the patent applicant made misleading arguments to the patent examiner for the allowance of the claims and withheld highly pertinent contemporaneously known prior art. *LaBounty*, 958 F.2d at 1076.

■ All circumstances, including any showing of good faith, should be considered in determining intent to deceive. *Paragon Podiatry Lab. v. KLM Lab.*, 984 F.2d 1182, 1190 (Fed.Cir.1993); *Halliburton Co. v. Schlumberger Technology Corp.*, 925 F.2d 1435, 1443 (Fed.Cir.1991); *Kingsdown Medical Consultants Ltd. v. Hollister, Inc.*, 863 F.2d 867, 876 (Fed.Cir.1988). But a mere denial of intent to mislead the PTO will not be sufficient with a showing of a high level of materiality and proof that party knew or should have known about materiality. *FMC Corp. v. Manitowoc*

*Co.*, 835 F.2d 1411, 1415–16 (Fed.Cir.1987) ("an overwhelming showing of materiality plus applicant's knowledge of materiality may raise inference of intent so strong as to require a convincing showing of subjective good faith to offset it."). *FMC*, 835 F.2d at 1415. A party cannot intentionally avoid learning of materiality. *Id.* An applicant cannot cultivate ignorance because the duty to disclose is subject to a duty of reasonable inquiry. *Arcade, Inc. v. Minnesota Mining & Mfg. Co.*, 24 U.S.P.Q.2d 1578 (E.D.Tenn.1991); *Nintendo of America, Inc. v. Magnavox Co.*, 707 F.Supp. 717, 722 (S.D.N.Y.1989) ("An applicant cannot avoid the requirement that he disclose material prior art by ignoring clear indications that such prior art exists.")

■ In the present case, the circumstances show that Star Brite intended to deceive the patent examiner. Star Brite distinguished the claims of the '598 patent from the claims of the patents cited by the patent examiner on the following grounds: (1) the other patents disclosed vinyl solutions that were not air-dried and (2) the other patents disclosed vinyl solutions that were caulking substances or primers but were not coatings. Significantly, Star Brite failed to disclose the two MDR vinyl products, Liquid Lectric Tape and Whip–End Dip, both of which were air-dry coatings. According to *LaBounty*, these undisputed facts show intent to mislead the PTO.

Other facts about the surrounding circumstances also show intent to mislead the PTO. Star Brite knew that MDR produced a vinyl liquid electrical tape product. (Def.'s Resp. to Pl.'s SMF at 52.) Prior to submitting the application for the '598 patent, it is undisputed that Mr. Dornau, Mr. Russo, and/or Mr. Teiger: (1) held a can of MDR's Liquid Lectric Tape, (2) saw the label on the can of Liquid Lectric Tape, (3)

read the label on the can of Liquid Lectric Tape, and (4) opened a container of MDR's Liquid Lectric Tape and spread the product on an exposed electrical connection. (Def.'s Resp. to Pl.'s SMF at 60.) Yet, Star Brite would have the Court believe that the inventors made no attempt to observe the product for an indication that the formula might be similar. For instance, smelling the mixture the presence of solvents might be detected, and using the MDR product to coat an object would show that the coating was flexible and that a plasticizer was present. The actions of the inventors show that Star Brite cultivated ignorance and breached the duty of reasonable inquiry imposed as a component of the duty of candor in prosecuting a patent application. *See FMC*, 835 F.2d at 1415 (stating that party cannot intentionally avoid discovering materiality); *Arcade, Inc. v. Minnesota Mining & Mfg. Co.*, 24 U.S.P.Q.2d 1578 (E.D.Tenn.1991) (imposing duty of reasonable inquiry). In addition, Star Brite knew about the Union Carbide and Goodyear product literature and failed to disclose *any* prior art references to the patent examiner. (Def.'s Resp. to Pl.'s SMF at 47–49, 60.)

Thus, an inference of intent has been raised by an "overwhelming showing of materiality plus applicant's knowledge of materiality." Because this inference has been raised, Star Brite must make "a convincing showing of subjective good faith to offset it." *FMC*, 835 F.2d at 1415–16.

While Star Brite asserts that its agents and principals "believed" the MDR references were not material, the arguments made in favor of the claims belie that assertion and Star Brite fails to offer evidence of good faith. A mere denial of intent to mislead does not suffice to overcome the evidence showing intent, and Star Brite has not offered other evidence of good faith.

### 3. Balancing of Factors

As explained above, the cited non-disclosure must be both material and intended, and these two elements comprise a balancing test. *Halliburton Co. v. Schlumberger Tech. Corp.*, 925 F.2d 1435, 1439 (Fed.Cir.1991). In other words, if the non-disclosure was very material, then less evidence of intent will be required to find inequitable conduct and *visa versa. Baxter Int'l, Inc. v. McGaw, Inc.*, 149 F.3d 1321, 1327 (Fed.Cir.1998).

Here, there is both strong evidence of the materiality of the undisclosed prior art references and strong evidence of intent to deceive by the inventors. In light of the undisputed evidence offered by North American, a finding of inequitable conduct is appropriate as a matter of law.

While summary judgment on inequitable conduct may be "rare," this case offers circumstances in which inequitable conduct has been established by clear and convincing evidence that has not been adequately refuted. Therefore, summary judgment on this issue is appropriate.

Accordingly, the Court hereby **GRANTS** North American's Motion for Partial Summary Judgment [262–1], declaring the '598 patent both invalid and unenforceable.

### Motion for Production of Transcript

The motion for production of the Dornau Transcript was an oral motion made on March 27, 2000 at a hearing before Magistrate Judge Feldman. Discovery has concluded for the first part of this case, a motion for partial summary judgment has been granted on the issues of invalidity and enforceability. Mr. Dornau allegedly invented Star Brite's Liquid Electrical Tape. The testimony of the inventor would not relate to the issues of anticipation by prior art or obviousness. Since the patent is invalid on these two grounds, Mr. Dornau's deposition was not necessary for the

**1368**

Court to declare the patent invalid. In light of the patent's invalidity, North American Oil Company, Inc.'s ("North American") Motion for Order Requiring Production of Dornau Transcript [0–0] is hereby **DENIED AS MOOT**.

### Motion for Attorney's Fees

On January 29, 2001, this Court agreed with Judge Feldman that North American's filing of a criminal disposition was improper and that Star Brite was entitled to attorney's fees in connection with a motion to strike that filing. In addition, the Court denied as moot Star Brite's separate motion for sanctions. Star Brite now files an application for the attorney's fees awarded in that order, seeking an award of $4000.50. While Star Brite's counsel is entitled to a fee award, the submitted fees of $4000.50 includes work on the separate motion for sanctions. The motion to strike, including a request for attorney's fees, allowed for the relief requested, and the motion for sanctions was not necessary. Therefore, the Court finds that Star Brite is entitled to $2099.25 for fees related to filing the motion to strike. North American shall remit this amount to Star Brite's counsel.

### CONCLUSION

North American's Motion for Partial Summary Judgment [262–1] is hereby **GRANTED**. North American's Motion for Order Requiring Production of Dornau Transcript [0–0] is hereby **DENIED AS MOOT**. Star Brite's Motion for Attorney's Fees for September 13, 2000 motion to strike [333–1] is hereby **GRANTED**, and North American shall pay $2099.25 in attorney's fees to Star Brite's counsel.